*823 OPINION OF THE COURT
Jack M. Battaglia, J.
In this consolidated action for first-party no-fault benefits, five providers of physical therapy, chiropractic, acupuncture, or transportation services seek payment from State Farm Mutual Automobile Insurance Company for services provided to six persons allegedly injured in automobile collisions. There are 197 separate bills, which total $78,987.74.
The only issue for trial was whether the alleged injuries arose from “staged accidents.” In two of the four consolidated cases, plaintiffs’ motions for summary judgment were denied, and the denials were upheld on appeal. (See A.B. Med. Servs. PLLC v State Farm Mut. Auto. Ins. Co., 5 Misc 3d 133[A], 2004 NY Slip Op 51432[U] [App Term, 9th & 10th Jud Dists 2004]; A.B. Med. Servs. PLLC v State Farm Mut. Auto. Ins. Co., App Term, 2d & 11th Jud Dists, June 22, 2004, No. 2003-1057 KC.) As held by Appellate Term for the Second and Eleventh Judicial Districts in one of the cases, the affidavit of State Farm’s investigator “set forth sufficient facts to demonstrate that [State Farm] possessed a ‘founded belief that the alleged injury does not arise out of an insured accident.’ ” (Id. at SM-2, quoting Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195, 199 [1997].) The holding of Appellate Term for the Ninth and Tenth Judicial Districts in the other case is to the same effect. (See A.B. Med. Servs. PLLC v State Farm Mut. Auto. Ins. Co., 2004 NY Slip Op 51432[U], *2.)
In Central Gen. Hosp. v Chubb Group of Ins. Cos. (90 NY2d 195 [1997]), the Court of Appeals held that “an insurer, despite its failure to reject a claim within the 30-day period” prescribed by the governing statute and regulations, “may assert a lack of coverage defense premised on the fact or founded belief that the alleged injury does not arise out of an insured incident.” (Id. at 199 [emphasis added].) “[T]he preclusion remedy does not apply to a defense of no coverage at all.” (Id. at 202.)
“A deliberate collision caused in furtherance of an insurance fraud scheme is not a covered accident.” (State Farm Mut. Auto. Ins. Co. v Laguerre, 305 AD2d 490, 491 [2d Dept 2003]; see also Matter of Metro Med. Diagnostics v Eagle Ins. Co., 293 AD2d 751, 751-752 [2d Dept 2002].) Indeed, when a collision is “an intentional act, not an accident,” there is no coverage (see Westchester Med. Ctr. v Travelers Prop. Cas. Ins. Co., 309 AD2d 927, 928 [2d Dept 2003]), “regardless of whether the intentional col *824 lision was motivated by fraud or malice” (see Matter of Government Empls. Ins. Co. v Shaulskaya, 302 AD2d 522, 523 [2d Dept 2003]).
The insurer “has the burden to come forward with proof in admissible form to establish ‘the fact’ or the evidentiary ‘foundation for its] belief’ ” that there is no coverage. (See Mount Sinai Hosp. v Triboro Coach, 263 AD2d 11, 19-20 [2d Dept 1999], quoting Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d at 199; see also Hospital for Joint Diseases v Hertz Corp., 9 AD3d 392, 392 [2d Dept 2004]; St. Luke’s Roosevelt Hosp. v Allstate Ins. Co., 303 AD2d 743, 744 [2d Dept 2003].)
It is not easy for this court to know what to make of the “fact or founded belief’ formulation in Chubb. It would seem that either there is coverage, or there is not; that either there was a “staged accident,” or there was not. We generally do not relieve a contracting party from performance under the contract because the party “believes” that performance is not required, whether “founded” or not, if in “fact” performance is required. The formulation does, however, reflect that a determination as to coverage is often a function of circumstance and inference, and the formulation does fairly reflect the evidentiary burdens when there is a dispute as to coverage.
“An insured seeking to recover for a loss under an insurance policy has the burden of proving that a loss occurred and also that the loss was a covered event within the terms of the policy.” (Gongolewski v Travelers Ins. Co., 252 AD2d 569, 569 [2d Dept 1998], quoting Vasile v Hartford Acc. & Indem. Co., 213 AD2d 541, 541 [2d Dept 1995]; see also Dato Jewelry v Western Alliance Ins. Co., 238 AD2d 193, 193 [1st Dept 1997].) Whatever the risk or loss covered, it has long been the insured’s burden to prove coverage under the policy. (See Lavine v Indemnity Ins. Co., 260 NY 399, 410 [1933]; Whitlatch v Fidelity & Cas. Co. of N.Y., 149 NY 45, 48 [1896]; Zuckerberg v Blue Cross & Blue Shield of Greater N.Y., 108 AD2d 56, 61 [2d Dept 1985], affd 67 NY2d 688 [1986]; Washburn v Wholehealth Ins. Network, 196 AD2d 813, 815 [2d Dept 1993]; Glogvics v Preferred Acc. Ins. Co. of N.Y., 245 App Div 817, 817 [2d Dept 1935]; Bracey v Metropolitan Life Ins. Co., 54 Misc 2d 175, 180 [App Term, 2d Dept 1967].)
In an action for first-party no-fault benefits, “a provider’s proof of a properly-completed claim makes out a prima facie case” (see Amaze Med. Supply v Eagle Ins. Co., 2 Misc 3d 128[A], *825 2003 NY Slip Op 51701[U], *3 [App Term, 2d & 11th Jud Dists]; see also A.B. Med. Servs. PLLC v Lumbermens Mut. Cas. Co., 4 Misc 3d 86, 87 [App Term, 2d & 11th Jud Dists 2004]). To adopt Appellate Term’s conception in the related area of medical necessity, there is a “presumption of [coverage] which attaches to the claim form.” (See Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co., 7 Misc 3d 18, 22 [App Term, 2d & 11th Jud Dists 2004].)
As stated, the insurer bears the burden of coming forward with admissible evidence of “the fact” of lack of coverage or of the “foundation for its] belief’ that there is no coverage. (See Mount Sinai Hosp. v Triboro Coach, 263 AD2d at 19-20.) But the burden of coming forward with evidence is not the burden of persuasion. (See McClelland v Climax Hosiery Mills, 252 NY 347, 358 [1930] [Cardozo, Ch. J., concurring].) “Shifting the burden of explanation or of going on with the case does not shift the burden of proof.” (Plumb v Richmond Light & R.R. Co., 233 NY 285, 288 [1922]; Matter of Philip M., 82 NY2d 238, 244 [1993].)
The burden of persuasion stays with the plaintiff, and if the insurer carries its burden of coming forward, “plaintiff must rebut it or succumb.” (See Baumann v Long Is. R.R., 110 AD2d 739, 741 [2d Dept 1985].) Appellate Term appears to have recognized these evidentiary burdens, and their consequences, again in the context of medical necessity.
“[W]here the plaintiff relies solely on its proof of claim to establish a prima facie showing, without any additional submission of proof of medical necessity in admissible form, and, in opposition, the defendant provides proof in admissible form of the lack of medical necessity, summary judgment may, in appropriate circumstances, be awarded to the defendant unless the plaintiff comes forward with admissible proof in reply to create a triable issue of fact.” (A.B. Med. Servs. v New York Cent. Mut. Fire Ins. Co., 3 Misc 3d 136[A], 2004 NY Slip Op 50507[U], *2 [App Term, 2d & 11th Jud Dists 2004].)
In this action, the only witness at trial (other than a witness to allow State Farm to attempt to make an evidentiary record as to a rejected defense) was Robert Battista, who is employed as an investigator in State Farm’s Special Investigative Unit. Mr. Battista provided the affidavits submitted on the motions *826 for summary judgment that Appellate Term for both the Second and Eleventh Judicial Districts and for the Ninth and Tenth Judicial Districts found “sufficient ... to demonstrate that [State Farm] possessed a ‘founded belief ” that the “accidents” here were “staged.” (See A.B. Med. Servs. PLLC v State Farm Mut. Auto. Ins. Co., June 22, 2004, No. 2003-1057 KC, at SM-2.)
Mr. Battista’s testimony at trial essentially tracked the affidavits submitted on the summary judgment motions, and it may be that Appellate Term has, in effect, determined that his testimony is sufficient to carry State Farm’s burden of coming forward on the question of coverage, with the result that plaintiffs were then required to rebut State Farm’s “founded belief’ in order to sustain their burden of persuasion on coverage. “A denial of a motion for summary judgment is not necessarily . . . the law of the case . . . that will be established at trial.” (Sackman-Gilliland Corp. v Senator Holding Corp., 43 AD2d 948, 949 [2d Dept 1974] [emphasis added].) After all, “the evidence may be different at trial.” (See S.L. Benfica Transp., Inc. v Rainbow Media, Inc., 13 AD3d 348, 349 [2d Dept 2004].)
That does not mean that there is no place for the law of the case doctrine after denial of a summary judgment motion. (See Seneca Trucking Co. v D.H. Overmeyer Co., 36 AD2d 894, 894 [4th Dept 1971].) Here, two appellate panels and two trial court judges have concluded, based upon evidence virtually the same as that introduced at this trial, that State Farm had a “founded belief’ that the “accidents” were “staged.” The avoidance of “inefficiency and disorder” that is the goal of the law of the case doctrine (see People v Evans, 94 NY2d 499, 503-504 [2000]) would be served by this court’s adoption of the conclusions reached by those who have already considered this case.
The court recognizes that there is case law that would suggest a different allocation of evidentiary burdens for allegations of a “staged accident.” “In an action to recover the proceeds of a fire insurance policy, it is the insurer’s burden to establish the affirmative defense of arson,” and the “measure of persuasion is that of clear and convincing evidence.” (Hutt v Lumbermens Mut. Cas. Co., 95 AD2d 255, 256-257 [2d Dept 1983]; see also 3910 Super K v Pennsylvania Lumbermens Mut. Ins. Co., 219 AD2d 589, 589-590 [2d Dept 1995].) There are important differences, however, between the “affirmative defense of arson” and the issue of coverage for an intentional collision.
The arson defense requires proof of both the incendiary nature of the fire and that it was set by or with the consent of *827 the insured. (See Chenango Mut. Ins. Co. v Charles, 235 AD2d 667, 668-669 [3d Dept 1997]; Ausch v St. Paul Fire & Mar. Ins. Co., 125 AD2d 43, 45 [2d Dept 1987].) That is why proof of financial motive is so important in arson cases. (See Schlegel v Aetna Cas. & Sur. Co., 282 AD2d 516, 517 [2d Dept 2001]; Chenango Mut. Ins. Co. v Charles, 235 AD2d at 669.) It is “because arson is but one form of fraud in making a claim under a policy” that “an inference of arson must be strong and almost inevitable.” (Hutt v Lumbermens Mut. Cas. Co., 95 AD2d at 256-257 [internal quotations marks, brackets and citations omitted].)
With an alleged “staged accident” or other intentional collision, it is the intent that is crucial, not the motive, financial or otherwise, and even the innocent insured is deprived of coverage. (See McCarthy v Motor Veh. Acc. Indem. Corp., 16 AD2d 35 [4th Dept 1962], affd 12 NY2d 922 [1963]; Matter of Progressive Northwestern Ins. Co. v Van Dina, 282 AD2d 680 [2d Dept 2001]; Matter of Aetna Cas. & Sur. Co. v Perry, 220 AD2d 497 [2d Dept 1995].) The appellate decisions dealing with intentional collisions, whether “motivated by fraud or malice” (see Government Empls. Ins. Co. v Shaulskaya, 302 AD2d at 523), characterize the insurer’s “defense” as lack of coverage; there is no indication that the evidentiary burdens and “measure of persuasion” (see Hutt v Lumbermens Mut. Cas. Co., 95 AD2d at 256-257) are to differ when an alleged intentional collision might be motivated by fraud.
Similarly, in Dato Jewelry v Western Alliance Ins. Co. (238 AD2d 193 [1st Dept 1997]), where the insurer was estopped from asserting a “dishonest theft” exclusion from coverage for an alleged jewelry robbery, because the insurer did not deny coverage on that basis (see id. at 193), the jury was properly charged that “the burden was on the insured to prove the robbery was legitimate rather than on the insurer to prove it was staged” (see id.). Generally, an insurer bears the burden of proving an exclusion from coverage. (See Neuwirth v Blue Cross & Blue Shield of Greater N.Y., Blue Cross Assn., 62 NY2d 718, 719 [1984]; Utica Mut. Ins. Co. v Prudential Prop. & Cas. Ins. Co., 103 AD2d 60, 63 [2d Dept 1984].) Lack of coverage is not an exclusion. (See State Farm Mut. Auto. Ins. Co. v Laguerre, 305 AD2d at 491-492.)
Arson may be established by circumstantial evidence (see Stone v Continental Ins. Co., 234 AD2d 282, 283 [2d Dept 1996]), as may fraud generally (see Booth v Bunce, 33 NY 139, 159 *828 [1865]; Hickok v Cowperthwait, 134 App Div 617, 618 [2d Dept 1909]). “Circumstances insignificant in themselves may acquire probative force as links in the chain of circumstantial proof.” (Van Iderstine Co. v Barnet Leather Co., 242 NY 425, 435 [1926].) It may be that in a case like this, where the only admissible evidence on whether the collision was intentional is that submitted by the insurer, the evidentiary burdens and standard of proof will not determine the result.
The court recognizes, however, that some of the information that Mr. Battista relied upon in his affidavits was hearsay that was not rendered admissible by appropriate foundation, and that those opposing a motion for summary judgment are, within limits, permitted to rely on otherwise inadmissible information. (See Phillips v Kantor & Co., 31 NY2d 307, 311-312 [1972]; Kwi Bong Yi v JNJ Supply Corp., 274 AD2d 453, 453 [2d Dept 2000]; Chubb & Son v Riverside Tower Parking Corp., 267 AD2d 128, 128 [1st Dept 1999].) The Appellate Term opinions here do not specify the information that the respective panels found admissible and sufficient and the information, if any, that was not considered. It is this court’s view that, even without the inadmissible information that was submitted on the motions, State Farm sufficiently established at trial its founded belief that there is no coverage.
Three of plaintiffs’ assignors — Cindy Toledo, Kimberly Toledo and Joseph Murray — were allegedly injured on December 7, 2001 when the vehicle in which they were riding, a 1987 Pontiac Bonneville, was rear-ended by a 1987 Chevy Caprice. The vehicle in which plaintiffs’ assignors were riding was owned by Marianna Manoylo, and was insured by State Farm. Coverage for the Manoylo vehicle was obtained pursuant to the assigned risk program. Although the policy was written in May 2001, it was changed only four days before the collision to cover Ms. Manoylo’s Bonneville. The coverage was canceled less than two months after the collision because of nonpayment of the premium.
The other three of plaintiffs’ assignors — Yuriy Ozerov, Nathan Shylakh and Marlen Belyavsky — were allegedly injured on February 10, 2002 when the vehicle in which they were riding, a 1991 Ford Tempo, was rear-ended by a 1989 Plymouth Voyager. The vehicle in which plaintiffs’ assignors were riding was owned by Mr. Ozerov, and was insured by State Farm. Coverage for the Ozerov vehicle was obtained pursuant to the assigned risk program approximately one month before the collision, and was *829 canceled one month after the collision because of nonpayment of the premium.
In addition to the similarities between the December 2001 collision and the February 2002 collision that are apparent from the above recitation, two of the persons riding in the State Farm-insured vehicle at the time of the February 2002 collision had relationships with persons who were involved in the December 2001 collision. Marlen Belyavsky’s mother is Svetlana Manoylo, and they both resided with Marianna Manoylo. And Nathan Shylakh resided with Oksana Shylakh, who was a passenger in the Chevy Caprice that rear-ended the Manoylo vehicle. Moreover, Nathan Shylakh and Yuriy Ozerov, the owner and driver of the State Farm-insured vehicle, were involved in another collision approximately one year earlier.
State Farm obtained examinations under oath of Cindy Toledo and Kimberly Toledo (Dec. 2001 collision) and of Yuriy Ozerov, Nathan Shylakh and Marlen Belyavsky, the latter with his mother, Svetlana Manoylo (Feb. 2002 collision). At the examinations, all three of the assignors who were involved in the February 2002 collision purported to withdraw the claims that had been submitted to State Farm, an effort that was ineffective. (See 11 NYCRR 65-3.11 [d].)
In addition to the circumstances recited so far, based upon evidence admitted at trial, in disclaiming coverage State Farm relied on other circumstances, based upon documents not properly admitted into evidence. State Farm pointed to discrepancies and other problems revealed by the transcripts of the examinations under oath of Cindy Toledo and Kimberly Toledo, but State Farm did not lay any foundation or make any other showing that would support the admissibility of the transcripts.
State Farm also pointed to information obtained from the National Insurance Crime Bureau (NICE), which serves as a clearinghouse of sorts for data from insurance companies concerning claims made against all types of policies. Certainly, such “loss histories” were material to the issues to be determined. (See Rickert v Travelers Ins. Co., 159 AD2d 758, 760 [3d Dept 1990].) But State Farm did not lay any foundation or make any other showing that would support the admissibility of this NICE information. State Farm did cite People v Veloz (273 AD2d 259 [2d Dept 2000]) as authority for the admissibility of NICE information, but the Court there merely stated that “the National Insurance Crime Bureau records were properly admitted into evidence as business records,” without any description *830 of the “records” admitted or of any foundation that may have been laid for admittance (see id. at 259).
In the interest of completeness, the court notes that the NICE information offered by State Farm indicated a significant insurance claim history for Marianna Manoylo, Svetlana Manoylo and Oksana Shylakh. The information also revealed that the owner and driver of the second vehicle involved in the February 2002 collision, Ediberto Olavarria, had been involved in a collision on December 29, 2001 together with a David Fich, and that Mr. Fich had been in a collision on April 30, 2001 together with Svetlana Manoylo. Again, this information is inadmissible hearsay.
In addition to the inferences arising from the facts and circumstances related to the collisions, State Farm argues that the purported withdrawal of claims by the assignors involved in the February 2002 collision evidences a “consciousness of guilt” that constitutes an “admission by conduct,” at least as to those assignors. (See Nowack v Metropolitan St. Ry. Co., 166 NY 433, 437, 439, 442 [1901]; Kamenov v Northern Assur. Co. of Am., 259 AD2d 958, 959 [4th Dept 1999]; Bazza v Banscher, 143 AD2d 715, 716 [2d Dept 1988].) Since State Farm is not offering the purported withdrawal to divest plaintiffs of their title to the claims sued upon (see Tierney v Fitzpatrick, 195 NY 433, 434 [1909]; Dinnebeil v Ringer, 101 Misc 658, 663-664 [App Term, 1st Dept 1917]), the inference that arises from the assignors’ conduct appears to be admissible against plaintiffs (see Leon Sylvester, Inc. v Aetna Cas. & Sur. Co., 227 AD2d 212 [1st Dept 1996]; see also Kamenov v Northern Assur. Co. of Am., 259 AD2d at 958-959). Since the withdrawal of the claims, however, is not unequivocally referable to “guilt,” the inference here has some, but not substantial, probative value.
Although an insurer’s “founded belief’ that a collision was “staged” cannot be based upon “unsubstantiated hypotheses and suppositions” (see A.B. Med. Servs. v Eagle Ins. Co., 3 Misc 3d 8, 9-10 [App Term, 2d Dept 2003]; Amstel Chiropractic v Omni Indem. Co., 2 Misc 3d 129[A], 2004 NY Slip Op 50088[U], *1-2 [App Term, 2d & 11th Jud Dists 2004]), of necessity in most cases it will be established by circumstantial evidence (see State Farm Mut. Auto. Ins. Co. v Laguerre, 305 AD2d at 491; A.B. Med. Servs. PLLC v State Farm Mut. Auto. Ins. Co., 4 Misc 3d 83, 84-85 [App Term, 9th & 10th Jud Dists 2004]; Matter of Progressive County Mut. Ins. Co. [McNeil], 4 Misc 3d 1022[A], 2004 NY Slip Op 50998[U], *2 [Sup Ct, Nassau County 2004]; *831 Matter of National Grange Mut. Ins. Co. v Vitebskaya, 1 Misc 3d 774, 775-777 [Sup Ct, Kings County 2003]). Mr. Battista testified that the facts and circumstances that he relied upon in reaching his conclusion that the two collisions here were “staged” are recognized as probative in the field of insurance fraud investigation, but State Farm made no attempt to introduce any documents or other evidence of that.
Mr. Battista’s trained opinion is entitled to some weight (see Matter of Travelers Indem. Co. v Morales, 188 AD2d 350, 351 [1st Dept 1992]), but, at least in this action, the strength of the inferences must be measured by “common sense” and the “logic of common experience itself’ (see Schneider v Kings Highway Hosp. Ctr., 67 NY2d 743, 744-745 [1986]). So measured, the court considers the evidence sufficient to carry State Farm’s burden of coming forward with a “founded belief’ that the collisions were “staged.”
This conclusion is buttressed by the failure of plaintiffs to call any of the assignors to testify at trial. The assignors would have been expected to give testimony that was material and noncumulative, and, most importantly, testimony that would be favorable to plaintiffs. (See People v Savinon, 100 NY2d 192, 197 [2003].) Plaintiffs made no showing that any of the assignors was “unavailable,” either in fact or on a plea of privilege (see id. at 197-199), and no explanation was offered for their not having been subpoenaed to testify (see id. at 199-200). It may be that even “Herculean lengths” (see id. at 199) would not have produced any of the assignors in court, but on this record the court takes a “permissive adverse inference” (see id. at 201) that they would not have helped plaintiffs’ cause.
Plaintiffs introduced no evidence to rebut the inferences supporting a conclusion that the State Farm policies provide no coverage for the December 2001 and February 2002 collisions. Any statements by the drivers that the investigating officers noted in the respective police accident reports were, in the context of this action, inadmissible to establish that an “accident” occurred. (See Cover v Cohen, 61 NY2d 261, 274 [1984]; Bates v Yasin, 13 AD3d 474, 474 [2d Dept 2004]; Hoffman v Eastern Long Is. Transp. Enter., 266 AD2d 509, 510 [2d Dept 1999].)
Counsel ably attempted, by cross-examination of Mr. Battista and argument, to weaken the strength of State Farm’s showing. One may accept, for example, that older vehicles will often be insured pursuant to the assigned risk program. And one could *832 agree that it is more likely for an older vehicle damaged in a collision not to be repaired, and for its insurance to be allowed to lapse. But, here, we have two collisions that occurred within a short window of insurance coverage, with four vehicles each more than 10 years old, and relationships linking an owner or at least one occupant of three of the vehicles. In each of the collisions, moreover, the State Farm vehicle was rear-ended when stopped, and, according to the police accident reports, the drivers of the vehicles that hit them were particularly accommodating in acknowledging fault.
The court is mindful that there was no direct evidence that any of the plaintiffs here knowingly participated in any insurance fraud scheme, or even suspected one. But “[w]here a loss is caused by the fraud of a third party, in determining the liability as between two innocent parties, the loss should fall on the one who enabled the fraud to be committed.” (Fidelity Natl. Tit. Ins. Co. of N.Y. v Consumer Home Mtge., 272 AD2d 512, 514 [2d Dept 2000].) Although any fraudulent conduct of the assignors might not be “properly imputed” to plaintiffs (see id.; see also A&S Med. v Allstate Ins. Co., 196 Misc 2d 322, 324 [App Term, 1st Dept 2003], affd 15 AD3d 170 [1st Dept 2005]), plaintiffs would be among the “primary beneficiaries of [the] fraud” (see Chubb & Son v Consoli, 283 AD2d 297, 299 [1st Dept 2001]). And, generally, “[a]n assignee stands in the shoes of the assignor” (see Arena Constr. Co. v J. Sackaris & Sons, 282 AD2d 489, 489 [2d Dept 2001]).
Plaintiffs, moreover, have remedies available to them that are not available to the millions of New York motorists that pay the additional premium costs that the Court of Appeals has identified as resulting from automobile insurance fraud (see Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 861 [2003]). Service providers may explicitly include in their assignment documents provision for recourse against the assignor if the insurer does not pay because of lack of coverage, and the providers may bring an assignor into any action against the carrier when the carrier defends nonpayment on the ground of lack of coverage.
Plaintiffs have failed to persuade this court that the State Farm policies provide coverage for the claims at issue.
Judgment awarded to State Farm, dismissing the claims.