*335 OPINION OF THE COURT
Arlene P. Bluth, J.
When defending a claim for first-party no-fault benefits, an insurer may raise at any time the defense that the alleged injuries do not arise out of an insured incident. What must the insurer present at trial when asserting that the injuries are the result of an accident staged in furtherance of an insurance fraud scheme? As explained more fully below, this court holds that the term “fraud” as used in that context is a red herring. This is because it does not matter whether the accident was staged in furtherance of an insurance fraud scheme or was deliberately caused under some other circumstances. The relevant inquiry is whether the collision was a true accident — that is, was it unintentional? Quite simply, if it was not an accident, then it falls outside the scope of the no-fault policy.
In these actions, plaintiff VS. Medical Services, EC. seeks to recover first-party no-fault benefits for medical services rendered to its assignors. At issue is $2,242.87 for treatment rendered to Carlos Gaviria and $12,997.06 for treatment rendered to Ysidro Liriano. Both assignors were involved in the same alleged accident, and plaintiffs claims for the treatment rendered to them were all denied based on defendant’s claim that the alleged accident was staged. Therefore, since there were common questions of law and fact, the trials were held jointly before this court on November 16, 2005. Defendant Allstate Insurance Company presented three witnesses: the insured, Victor Herasme; an outside investigator, Robert J. Sasso; and a claims examiner, Sandra Pryce. Plaintiff did not present any witnesses.
In the action pertaining to assignor Ysidro Liriano (Index No. 55821/04), a prior decision/order issued by Honorable Ellen M. Spodek on March 21, 2005 denied cross motions for summary judgment and found that although plaintiff had made out its prima facie case, defendant had raised an issue of fact as to whether the accident was staged. Therefore, the trial on the claims for Mr. Liriano was limited to the issue of whether the collision was an insured incident. As to the other assignor, Mr. Gaviria, plaintiff was still required to make out its prima facie case.
Based upon the testimony and evidence introduced at trial and having had the opportunity to observe the demeanor and credibility of the witnesses’ testimony, the court finds as follows:
*336 Findings of Fact
The assignors herein were involved in an alleged accident on May 8, 2001. One of the assignors, Mr. Gaviria, was driving, and the other, Mr. Liriano, was one of his passengers. The car, a 1985 Nissan, was owned and insured by Victor Herasme, who was defendant’s first witness. Mr. Herasme credibly testified that he frequently loaned out his car to people in the neighborhood. He testified that he had gotten into an accident with the car in or about January 2001, while he was driving; and that just prior to the accident in May 2001 which gave rise to this suit, he had lent the car to Mr. Gaviria (known to him only as “Carlos”), whom he knew casually from around the neighborhood. Mr. Herasme testified that Mr. Gaviria returned the car to him with a “small scratch”; when Mr. Herasme questioned him about it, Mr. Gaviria admitted that he had “scraped by a car” but refused to give details. Mr. Herasme also testified that he is known as Victor, that Mr. Gaviria only called him Victor, and that he was not called Jose by anyone, including Mr. Gaviria. However, when Mr. Gaviria was questioned by defendant in an examination under oath (EUO), the signed transcript of which was introduced into evidence as exhibit A, Mr. Gaviria flatly denied knowing Victor Herasme or anyone named Victor, and claimed to have borrowed the car from a man named Jose.
Defendant’s second witness was Robert J. Sasso, chief executive officer (CEO) of Above Average Investigations, Inc. He was hired by defendant to locate the following witnesses and serve them with subpoenas to testify at the trial: Mr. Gaviria (the driver and an assignor), Mr. Herasme (the owner and insured), Mr. Liriano (a passenger and an assignor), and the treating physician, Dr. Leonid Livchits. Mr. Sasso was unable to serve Mr. Gaviria, but successfully served the other three individuals. Of those, only Mr. Herasme appeared.
Finally, defendant presented Sandra Pryce, a claims representative who works in defendant’s special investigations unit. Ms. Pryce testified that she has been employed for 38 years by defendant, and for 11 years in her current position. Her job includes the review of files referred by the claims department for suspicion of fraud (meaning a noncovered incident), and making the ultimate determination of whether to pay or deny those claims after investigation. Ms. Pryce testified she was referred the file because another Allstate employee had spoken to the driver, Mr. Gaviria, who denied any involvement in an accident. (As described above, he later changed his story when *337 questioned by defendant under oath.) Ms. Pryce testified that the investigation revealed the following facts, and based thereon she determined that the accident was staged and that the claims should be denied:
(1) In his EUO, Mr. Gaviria denied knowing Mr. Herasme, the insured and owner of the vehicle he was driving.
(2) The alleged accident occurred on May 8, 2001, just under one month after the policy was taken out on April 9, 2001, and the policy was terminated for nonpayment on June 9, 2001, just over a month later.
(3) In a similar pattern, Mr. Herasme had taken out a policy on the car on December 28, 2000, the car was involved in an alleged accident less than a month later on January 19, 2001, and that policy was terminated for nonpayment on February 27, 2001.[1]
(4) In both accidents, there was minimal damage to the car, there were several passengers in the car, and no one was taken to the emergency room, although medical treatments were started later. In addition, both accidents occurred on Seventh Avenue in Manhattan — the first at 19th Street, and the second at 32nd Street.
(5) There were several inconsistencies in the EUO testimony of Mr. Gaviria, the driver, and Mr. Torres, one of the passengers (and the only one of the four passengers who appeared for an EUO). Ms. Pryce noted that they conflicted in very basic ways, including the number and gender of the passengers, whether the police witnessed the accident or were called to the scene, the purpose of the trip and destination of the car. In his EUO, Mr. Gaviria stated that besides him, there were three other people in the car, all male, and one whom he could not even identify; Mr. Torres said there were four other people, and that one was female. Mr. Gaviria said the police were on the scene to witness the accident; Mr. Torres said they were called and arrived later. Mr. Gaviria’s testimony on this point was contradicted by the police report, which Ms. Pryce reviewed as part of defendant’s file. Mr. Gaviria also said that they had been on their way to pick up the mother of one of the passengers, while Mr. Torres said they were just cruising aimlessly. Ms. Pryce credibly testified that, in her experience, these types of *338 inconsistencies — especially as to the number and identity of people in the vehicle — are indicative of a staged accident.
Based on all of these factors, and after consultation with Hazel Johnson, the original claims representative who had forwarded the file to her, Ms. Pryce determined that the accident was staged and therefore not a covered incident, and had the subject claims denied on that basis. She also duly notified the National Insurance Crime Bureau and the New York State Insurance Fraud Bureau.
Conclusions of Law
A. “Fraud” Is Not the Issue
No-fault insurance policies only cover vehicular accidents. An accident is, by definition, unintentional; a deliberate collision is not an accident. Therefore, damages resulting from a deliberate collision are not covered by no-fault insurance. (See Matter of Allstate Ins. Co. v Massre, 14 AD3d 610 [2d Dept 2005] [no coverage where claimant was injured in an intentional collision]; Matter of Government Empls. Ins. Co. v Robbins, 15 AD3d 484 [2d Dept 2005] [no coverage for claimant where collision was deliberately caused by the driver of the other vehicle]; Westchester Med. Ctr. v Travelers Prop. Cas. Ins. Co., 309 AD2d 927 [2d Dept 2003] [no coverage where wife was injured when her husband tried to kill her by deliberately driving their car over an embankment while he exited the vehicle]; Matter of Progressive Northwestern Ins. Co. v Van Dina, 282 AD2d 680 [2d Dept 2001] [no coverage where claimant was injured when she was mugged by driver of another car while loading packages into her trunk and was pulled under offender’s car].) This line of cases makes clear that even where the individual claiming benefits had no involvement in causing the collision but was merely an innocent injured party, coverage is properly denied because the collision was not an accident.
Moreover, it does not matter “whether the intentional collision was motivated by fraud or malice.” (Matter of Government Empls. Ins. Co. v Shaulskaya, 302 AD2d 522, 523 [2d Dept 2003]; see also Progressive N. Ins. Co. v Rafferty, 17 AD3d 888, 889 [3d Dept 2005] [no coverage where claimant deliberately rammed his car into person with whom he had been fighting].) While some intentional collisions are the products of insurance fraud schemes, others are not. In all such cases, it is the deliberate, nonaccidental character of the incident that makes it ineligible for no-fault coverage. Put another way, the no-fault *339 policy only covers accidents; it does not cover deliberate incidents. It does not matter whether the incident was a deliberate mugging, an attempted murder, a product of road rage, or a cold, calculated scheme to defraud the insurance company — if it was deliberate, it is not a covered incident under the no-fault policy.
Nevertheless, our appellate courts commonly invoke the term “fraud” when discussing the defense of lack of coverage; this may be because so many cases involving allegedly noncovered incidents center on accidents purportedly staged for the purpose of generating fraudulent insurance claims. (See State Farm Mut. Auto. Ins. Co. v Laguerre, 305 AD2d 490, 491 [2d Dept 2003] [“A deliberate collision caused in furtherance of an insurance fraud scheme is not a covered accident”]; see also Matter of Metro Med. Diagnostics v Eagle Ins. Co., 293 AD2d 751 [2d Dept 2002]; A.B. Med. Servs. PLLC v Encompass Ins., 10 Misc 3d 127LA], 2005 NY Slip Op 51892[U] [App Term, 2d & 11th Jud Dists 2005]; Ocean Diagnostic Imaging, P.C. v Utica Mut. Ins. Co., 9 Misc 3d 138[A], 2005 NY Slip Op 51745[U] [App Term, 9th & 10th Jud Dists 2005]; Careplus Med. Supply Inc. v Allstate Ins. Co., 9 Misc 3d 131[A], 2005 NY Slip Op 51598[U] [App Term, 2d & 11th Jud Dists 2005]; A.B. Med. Servs. PLLC v State-Wide Ins. Co., 7 Misc 3d 136[A], 2005 NY Slip Op 50785[U] [App Term, 2d & 11th Jud Dists 2005]; Melbourne Med., P.C. v Utica Mut. Ins. Co., 4 Misc 3d 92 [App Term, 2d & 11th Jud Dists 2004]; A.B. Med. Servs. v Eagle Ins. Co., 3 Misc 3d 8 [App Term, 2d Dept 2003].) Perhaps the seminal embodiment of this formulation is the Second Department’s pronouncement that “[a] deliberate collision caused in furtherance of an insurance fraud scheme is not a covered accident.” (State Farm v Laguerre, 305 AD2d at 491.) No-fault insurers and practitioners (including the parties and their counsel in this case) have also adopted the nomenclature of fraud when litigating claims involving allegedly staged accidents. This is true even though the no-fault regulations do not mention “fraud” as a defense to payment, but rather refer only to noncovered incidents. (See, e.g., 11 NYCRR 65-3.8 [e] [2].)
Unfortunately, the “fraud” label has created the mistaken impression that the insurance company must prove that the “accident” was the product of a fraudulent motive or scheme. But the fraud label is merely a distraction, since the focus for a “lack of coverage” defense must always be whether the collision was deliberate or a true accident. That is, the court must *340 determine whether the incident was unintentional (i.e., a true accident) or whether at least one driver intended to make contact (i.e., a deliberate event).
B. Establishing a Staged Accident Defense
In the no-fault context, the plaintiff need not prove coverage as part of its prima facie case. (See, e.g., Amaze Med. Supply Inc. v Lumbermens Mut. Cas. Co., 10 Misc 3d 127[A], 2005 NY Slip Op 51898[U] [App Term, 2d & 11th Jud Dists 2005]; Contemp. Med. Diag. & Treatment, P.C. v Government Empls. Ins. Co., 6 Misc 3d 137[A], 2005 NY Slip Op 50254[U] [App Term, 2d & 11th Jud Dists 2005]; Triboro Chiropractic & Acupuncture v Electric Ins. Co., 2 Misc 3d 135[A], 2004 NY Slip Op 50215[U] [App Term, 2d & 11th Jud Dists 2004] [setting forth the elements of the plaintiffs prima facie case, namely, that the statutory claim form, setting forth the fact and the amount of the loss sustained, was submitted to the defendant, and that payment of no-fault benefits is overdue].) Instead, the plaintiffs prima facie case establishes a presumption of coverage. (See A.B. Med. Servs. PLLC v State Farm Mut. Auto. Ins. Co., 7 Misc 3d 822, 825 [Civ Ct, Kings County 2005].)
Before trial, it is well established that to defeat a plaintiffs motion for summary judgment for first-party no-fault benefits, a defendant asserting a lack of coverage defense must set forth admissible evidence of “the fact or [a] founded belief that the alleged injury does not arise out of an insured incident.” (Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195, 199 [1997]; St. Luke’s Roosevelt Hosp. v Allstate Ins. Co., 303 AD2d 743 [2d Dept 2003]; Diagnostic Rehab. Medicine Serv., P.C. v Farm Family Cas. Ins. Co., 7 Misc 3d 137[A], 2005 NY Slip Op 50826[U] [App Term, 1st Dept 2005]; Ocean Diagnostic Imaging P.C. v Allstate Ins. Co., 6 Misc 3d 134[A], 2005 NY Slip Op 50189[U] [App Term, 9th & 10th Jud Dists 2005].) In other words, when the defense is based on lack of coverage, to defeat plaintiffs motion for summary judgment, the defendant must come forward with evidence in admissible form that creates an issue of fact and rebuts that presumption of coverage.
Once the plaintiffs motion for summary judgment is denied, however, there is a dearth of case law to address what showing the insurer must make at the trial to defeat the claim for first-party no-fault benefits. This court found only two published decisions addressing this issue, and they conflict with each other. In one, the court extrapolated the standard for defeating a summary judgment motion into the trial context. In A.B. Med. *341 Servs. PLLC v State Farm Mut. Auto. Ins. Co., Judge Jack M. Battaglia of this court held that if the insurer raises a lack of coverage defense, it is its burden at trial to come forward with evidence of “ ‘the fact’ [of lack of coverage or the] ‘foundation for its] bélief that there is no coverage.” (A.B. Med. Servs. PLLC v State Farm Mut. Auto. Ins. Co., 7 Misc 3d 822, 824 [Civ Ct, Kings County 2005], quoting Mount Sinai Hosp. v Triboro Coach, 263 AD2d 11, 19-20 [2d Dept 1999].) A completely different approach was taken by Judge Loren Baily-Schiffman of this court. In JSI Expert Serv. v Liberty Mut. Ins. Co. (7 Misc 3d 1009[A], 2005 NY Slip Op 50513[U] [Civ Ct, Kings County 2005]), Judge Baily-Schiffman rejected the approach of the A.B. Med. court. Instead, she focused on the fraud aspect and applied the “clear and convincing evidence” standard, the unusually high standard required to prove an independent cause of action for fraud. “This Court holds that the insurer’s defense of fraud, whether it be a staged accident or other fraud, requires proof by clear and convincing evidence.” (JSI Expert Serv. v Liberty Mut. Ins. Co., 7 Misc 3d 1009[A], 2005 NY Slip Op 50513[U], *3 [Civ Ct, Kings County 2005].)
Besides these two posttrial decisions, the issue of whether the incident was a true accident or a deliberate event also arises in another context. In cases where an insurer petitions the Supreme Court to permanently stay arbitration of a claimant’s no-fault claim on the ground that the collision was not a covered incident, the Supreme Court holds a framed issue hearing on that sole issue. In those posthearing decisions, the case law from the Second Department makes clear that whether a collision is a covered incident depends upon whether it was intentionally caused. (See Matter of Allstate Ins. Co. v Massre, 14 AD3d 610 [2d Dept 2005]; Matter of Government Empls. Ins. Co. v Robbins, 15 AD3d 484 [2d Dept 2005]; Westchester Med. Ctr. v Travelers Prop. Cas. Ins. Co., 309 AD2d 927 [2d Dept 2003]; Matter of Government Empls. Ins. Co. v Shaulskaya, 302 AD2d 522, 523 [2d Dept 2003]; Matter of Progressive Northwestern Ins. Co. v Van Dina, 282 AD2d 680 [2d Dept 2001].) If the collision was an intentional occurrence, then it is outside the scope of the no-fault policy regardless of why or how it occurred or who was behind it.
That does not mean that an insurer cannot or should not put forth evidence of a fraudulent scheme in order to prove that the collision was not an accident; it does mean, however, that the insurer need not prove fraud. In Matter of Eagle Ins. Co. v *342 Davis (22 AD3d 846 [2d Dept 2005]), the Second Department held that the Supreme Court should have considered evidence proffered on the issue of fraud, insofar as it bore on the question of whether the collision was a covered incident. “When [the insurer] raises an issue of fact as to whether the automobile collision . . . was deliberate or intentional, the issue of fraud is subsumed under the coverage issue. Evidence of such fraud should be considered in determining the broader coverage issue.” (Id. at 847 [citations omitted]; see also Matter of Government Empls. Ins. Co. v Spence, 23 AD3d 466 [2d Dept 2005].) Thus, the insurer may introduce evidence of a fraudulent scheme or motive to the extent that it is probative of the question of whether the collision was a true accident. In other words, evidence of fraud can serve as circumstantial evidence that this was not a covered incident. While “unsubstantiated hypotheses and suppositions” are not enough to make out a lack of coverage defense (see Amstel Chiropractic v Omni Indem. Co., 2 Misc 3d 129[A], 2004 NY Slip Op 50088[U], *1 [App Term, 2d & 11th Jud Dists 2004]), an insurer’s evidence of a purposeful collision will often be circumstantial. This is to be expected; in the absence of a mea culpa from one of the participants, the insurer — and ultimately the court — must examine the facts and circumstances of the incident to determine whether they give rise to an inference of lack of coverage. (See, e.g., A.B. Med. Servs., 7 Misc 3d 822.) Circumstantial evidence is sufficient if a party’s conduct “may be reasonably inferred based upon logical inferences to be drawn from the evidence.” (Benzaken v Verizon Communications, Inc., 21 AD3d 864, 865 [2d Dept 2005].)
C. Burdens of Proof at Trial
As set forth in section B above, the plaintiff need not prove coverage as part of its prima facie case. Instead, the plaintiffs prima facie case establishes a presumption of coverage. When the defense is based on lack of coverage, therefore, the defendant need only come forward with evidence that rebuts that presumption of coverage. That is, once the plaintiff has made out its prima facie case, the burden of production (also called the burden of going forward) on the issue of coverage falls upon the defendant, and the defendant must demonstrate that it has a founded basis for believing that the alleged collision was intentionally caused. The burden of persuasion, however, remains on the plaintiff, who must prove its case by a fair preponderance of the credible evidence. (See Kalra v Kalra, 149 AD2d 409, 411 [2d Dept 1989]; Prince, Richardson on Evidence *343 § 3-206 [Farrell 11th ed].) “[I]f the insurer carries its burden of coming forward, plaintiff must rebut it or succumb.” (A.B. Med. Servs., 7 Misc 3d at 825 [internal quotation marks and citation omitted].) How much evidence must defendant produce to satisfy its burden of production? There is no magic formula, but clearly it must be enough to rebut the presumption that the injuries were caused by a covered incident, that is, a true accident. (See Prince, Richardson on Evidence § 3-202.) After all the evidence has been presented, the court must decide whether the evidence of coverage preponderates in favor of the plaintiff, the party who bears the burden of persuasion. If the evidence weighs against the plaintiff, or is so evenly balanced that it is impossible to determine the matter, then judgment must be given for the defendant. (See Roberge v Bonner, 185 NY 265 [1906].)
D. Conclusion
Addressing the issue of plaintiffs prima facie case, the court finds that plaintiff made out its prima facie case as to assignor Ysidro Liriano on its summary judgment motion; at trial, plaintiff made out its prima facie case as to the other assignor, Carlos Gaviria, via the admissions of defendant, through the testimony of Ms. Pryce, that it received the claims submitted for Mr. Gaviria.
In this trial, defendant came forward with sufficient evidence to rebut the presumption of coverage by showing that it had a founded belief that the injuries did not arise from a covered incident — that is, that the accident was staged because at least one driver intended to make contact.[2] The court finds that the insurer, by Ms. Pryce, testified credibly that its denials of plaintiffs claims were based, or founded, upon the results of her investigation — including the profile- and claim history of the car (older model, accident shortly after insurance taking effect and policy cancelled shortly thereafter for nonpayment on two separate occasions), several passengers in the car, no emergency room treatment for any passenger, several material discrepancies in the car’s occupants’ stories as to the number and gender of people in the car, where they were going, and the driver denying knowing the owner of the car. At trial, defendant also pre *344 sented Mr. Herasme’s unrebutted testimony that his car suffered only a “small scratch” in the alleged accident — an event which sent no one to the emergency room, but which allegedly resulted in over $15,000 in treatment for these assignors alone.[3] Thus, the evidence produced by defendant rebutted the presumption of coverage which attached to plaintiff’s prima facie case, and shifted the burden of production back to plaintiff.
Plaintiff wholly failed to carry that burden. Plaintiff produced no evidence to rebut any of defendant’s proof; plaintiff did not even produce its assignors or any other witnesses to the alleged incident. Instead, plaintiff relied on its counsel’s vigorous cross-examination of defendant’s witnesses. The tactic did not succeed, and defendant’s credible proof stands unrefuted. Thus, based upon a fair preponderance of the evidence, this court finds that the subject collision was not a covered incident.
Accordingly, judgment is for defendant, and the complaints are hereby dismissed.

. Ms. Pryce explained that defendant was obligated to reinsure the vehicle because it was in the assigned risk pool, and due to the luck of the draw, Allstate got the vehicle twice.

. In this case, defendant denied the subject claims because, inter alia, the injuries were not caused by an accident. However, even if the denials were not premised upon lack of coverage, the outcome would be the same since at trial defendant established the defense of lack of coverage, and said defense is not subject to preclusion.

. In finding that the alleged injuries were not the result of a covered incident, this court does not suggest that fraud was committed by the medical provider with regard to the billed-for treatment, an issue not before the court in this trial.