**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff,**

**v.**

**CPT MEDICAL SERVICES, P.C., Hoss Medical Services, P.C., Huseyin Tuncel, M.D., Bozena Augustyniak, M.D., Michael Aziz, M.D., Anne Brutus, M.D., Irina Kimyagarova, M.D., Victor Mariani, M.D., Ahmad Riaz, M.D., Mark Slamowitz, D.C., and Sako Tarakhchyan, D.C., Defendants.**

**No. 04–CV–5045 (ILG).**

United States District Court, E.D. New York.

June 28, 2005.

Michael F. Gallagher, Ross O. Silverman, Jay Shapiro, Katten Muchin Zavis Rosenman, New York, NY, Attorneys for Plaintiff.

Harold J. Levy, Quadrino & Schwartz, P.C., Garden City, NY, Attorneys for defendants, Michael Aziz, M.D. and Anne Brutus, M.D.

Bruce Rosenberg, Lifshutz & Lifshutz, P.C., New York, NY, Attorneys for defendants, CPT Medical Services, P.C., Hoss Medical Services, P.C. and Huseyin Tuncel, M.D.

Jude R. Cardenas, Cardenas & Associates, New York, NY, Attorneys for defendant, Irina Kimyaharova, M.D.

Matthey J. Conroy, Belesi & Donovan, P.C., Garden City, NY, Attorneys for defendant, Bozena Augustyniak, M.D.

### MEMORANDUM AND ORDER

GLASSER, District Judge.

### INTRODUCTION

Pending before the Court is the motion of defendants Michael Aziz, M.D. ("Aziz") and Anne Brutus, M.D. ("Brutus") (collectively, "defendants") to dismiss the third, fourth and fifth causes of action in the complaint pursuant to Fed. R. Civ. 12(b)(6). Those causes of action are brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), and common law claims for fraud and unjust enrichment. Defendants argue that the complaint does not allege the essential elements of a claim for relief under RICO and for unjust enrichment, that plaintiff's fraud claim should be dismissed for lack of particularity, and that the Court lacks subject matter jurisdiction over this case. Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm" or "plaintiff") opposes the motion and asserts that the complaint states the elements of all claims alleged against defendants, and therefore the Court properly exercises subject matter jurisdiction over this action.

In addition, Aziz and Brutus have filed objections to Magistrate Judge Matusmoto's May 26, 2005 order (the "Order") requiring them to produce certain records and information in response to document demands and interrogatories served on them by State Farm. They argue that the document demands and interrogatories at issue are overbroad, unduly burdensome and also compel them to violate regulations promulgated under the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"). In response, State Farm argues that Magistrate Judge Matsumoto's ruling was neither clearly erroneous nor contrary to law, and thus defendants' objections should be overruled.

Also pending before the Court are the objections of defendants CPT Medical Services, P.C., Hoss Medical Services, P.C., Huseyin Tuncel, M.D. ("Tuncel"), Victor Mariani, M.D. and Mark Slamowitz, D.C. (collectively, the "Tuncel Defendants") to the Order denying their application to stay discovery pursuant to Fed.R.Civ.P. 26(c). The Tuncel Defendants argue that the Magistrate Judge improperly denied their application for a stay because the facts reveal that there is a pending state criminal case against Tuncel involving the same subject matter, and plaintiff would not be prejudiced by the issuance of a stay. Plaintiff asserts that Magistrate Judge Matsumoto correctly decided not to stay

discovery because defendants failed to meet the prerequisites for doing so.

For the reasons set forth below, defendants' motion to dismiss the complaint is denied, the objections of Aziz and Brutus to the Order are sustained in part and overruled in part, and the objections of the Tuncel Defendants to the Order are overruled.

## BACKGROUND

The facts as set forth below are drawn from the complaint, the allegations of which the Court accepts as true solely for purposes of this motion to dismiss. State Farm filed suit against, among others, Aziz, Brutus and the Tuncel Defendants, to recover millions of dollars which it paid as a result of defendants prescribing medically unnecessary current perception threshold tests ("CPT Tests") to plaintiff's insureds who were injured in automobile accidents.[1] Aziz and Brutus are physicians who treat insureds at several clinics in New York City for soft tissue injuries and have allegedly ordered unnecessary CPT Tests. (Compl.¶ 2(a)). Tuncel is a medical doctor who performs the CPT Tests on the insureds and interprets the results for, among others, Aziz and Brutus. (Id. ¶ 2(b)). Defendants CPT Medical Services, P.C. and Hoss Medical Services, P.C. are professional medical corporations owned and controlled by Tuncel, through which he renders, interprets and charges for the CPT Tests.[2] (Id. ¶ 2(c)).

According to the complaint, defendants know that the tests have no diagnostic value or other benefit to the insureds, the billing codes submitted to State Farm for the CPT Tests materially misrepresent the nature of the tests, and the documents submitted by defendants in support of the charges for the CPT Tests are false and materially misleading. (Compl.¶ 3). State Farm contends that the sole purpose of the tests was to generate fees and revenue for defendants and their co-conspirators. (Id.)

Under New York's Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. Law § 5101 et seq. and regulations issued thereunder, automobile insurers, like State Farm, are required to provide personal injury protection benefits for basic economic loss ("No–Fault Benefits") up to $50,000 per insured for necessary health care goods and services, including medically necessary diagnostic tests. (Compl.¶¶ 5, 6). Insureds may assign their right to No–Fault Benefits directly to providers of medically necessary diagnostic tests. (Id. ¶ 7). Pursuant to such assignments, providers may submit claims directly to insurance companies and receive payment for these tests. (Id.).

The purpose of the CPT Tests is ostensibly to diagnose the existence of abnormal conditions in the peripheral nerves and nerve roots of the insureds caused by the automobile accidents. (Compl.¶ 20). However, the CPT Tests are non-invasive,

[1]. Defendants Bozena Augustyniak ("Augustyniak"), Irina Kimyagarova, Victor Mariani, Ahmad Riaz, Mark Slamowitz and Sako Tarakhchyan are also alleged to have ordered medically unnecessary CPT Tests on behalf of insureds who they treated and these defendants are collectively referred to as the "Prescribing Doctors" in the complaint, see Compl. ¶ 2(a), and in this Memorandum and Order. Except for Augustyniak, none of these defendants have moved to dismiss the complaint. Augustyniak filed a motion to dismiss the unjust enrichment claim, but voluntarily withdrew that motion before it was fully briefed. See Docket Entry Numbers 17, 18 and 26.

[2]. Tuncel, CPT Medical Services and Hoss Medical Services are collectively referred to as the "PC Defendants" in the complaint. (Compl.¶ 2(c)).

purport to diagnose abnormalities only in the sensory nerves and sensory nerve roots, and cannot provide any diagnostic information about the motor nerves and motor nerve roots. (*Id.* ¶ 21). In the cases of many, if not all, of the insureds who were ordered to undergo CPT Tests by Aziz and Brutus (and the other Prescribing Doctors), these patients were also administered three tests by other medical providers at or around the same time which result in the most accurate diagnosis concerning the existence, nature, extent and specific location of abnormalities (i.e., neuropathies) in the peripheral nerves and nerve roots. (*Id.* ¶¶ 13, 19). These three diagnostic tests are called nerve conduction velocity tests ("NCVs"), electomyography tests ("EMGs") and magnetic resonance imaging tests ("MRIs"). (*Id.* ¶ 13). According to State Farm, "[e]ven if the CPT Tests had diagnostic value for these [i]nsureds, which they do not, there is absolutely no legitimate medical reason why CPT Tests would have been necessary under these circumstances." (*Id.* ¶ 19).

Plaintiff contends that the validity of CPT Tests to diagnose the existence, nature, severity or specific location of any abnormalities in the sensory nerves or any of the nerve fibers of which they are comprised is medically unproven. (Compl.¶¶ 31–35). Moreover, the two manufacturers of equipment used to perform CPT Tests allege that their competitor's product is, among other things, unreliable, irrelevant to its purpose and a fraud. (*Id.* ¶¶ 25–30). Further, plaintiff charges that even if the CPT Tests could produce valid diagnostic information, defendants do not follow the necessary protocols established by the manufacturers, for example, ordering the tests to be conducted within 14–21

days of the insured's automobile accident. (*Id.* ¶¶ 36–38).

In support of its claims, plaintiff avers that defendants submitted false and materially misleading statements set forth in "boilerplate letters" of medical necessity which they have signed or which bear their signature stamp. (Compl.¶¶ 39–40). These letters are false and misleading because they erroneously assert that the insureds were prescribed to undergo CPT Tests "to detect and quantify the presence of any neuropathies [i.e., abnormal conditions in the nerves] or radiculopathies [i.e., pinched nerve roots] . . . and will allow for early targeted intervention before morbidity can jeopardize outcome." (*Id.* ¶ 41). Not only do the CPT Tests fail to provide such information, but the tests were performed on the insureds well after NCVs, EMGs and MRIs were or easily could have been performed to allow for superior intervention. (*Id.*). The necessity letters also falsely represent that insureds have not received NCVs, EMGs and/or MRIs prior to undergoing the CPT Tests, and make other assertions which are unsupported medically, including that the CPT Tests quantify "the functional integrity of both the large and small afferent (sensory) nerve fibers."[3] (*Id.* ¶¶ 42–45).

Plaintiff asserts that they have justifiably relied on the forms signed by, among others, Aziz and Brutus. (Compl.¶ 69). It alleges that it is statutorily and contractually obligated to promptly and fairly process claims within thirty days. (*Id.* ¶ 70). State Farm contends that the facially valid documents signed by defendants and ultimately submitted to it, along with the false

---

**3.** The complaint also alleges that Tuncel and the other Tuncel Defendants submit false and materially misleading examination reports to State Farm, bearing the signature of Tuncel, and fraudulent claim forms, to collect their charges for the performance and interpretation of the CPT Tests needlessly given to the insureds. (Compl.¶¶ 46–67).

statements contained within, caused plaintiff to rely on them. (*Id.*).

Plaintiff states that Aziz ordered CPT Tests for at least fifty-three insureds, and Brutus ordered CPT Tests for at least 30 insureds, both of them knowing that the tests were medically unnecessary and of no diagnostic value. (Compl.¶¶ 79, 80). State Farm seeks damages in excess of $2,500,000 as a result of the alleged conspiracy. (*Id.* ¶ 100).

During discovery, State Farm served on Aziz and Brutus certain interrogatories and document requests. Defendants objected to several of these demands as being overbroad, unduly burdensome, requiring them to violate HIPPA and therefore clearly erroneous and contrary to law. For example, document request number 4 asks for "all documents relating to any transactions which generated cash or currency to be used in any way by or for your business" and document request number 33 asks for "all documents reflecting ... any income you have received in any entity that has provided health care services." (Brutus Mem. Of Law in Support of Objections, Exh. D). Magistrate Judge Matusmoto compelled Aziz and Brutus to respond to all discovery served on them by State Farm.

Tuncel was the subject of an indictment, bearing number 2379/03, returned in New York Supreme Court, Queens County, in which he, along with other individuals not party to this case, were charged with the crime of insurance fraud in the third degree. (Indictment is attached as Exh. A to Defs.' Mem. of Law). In support of their application for a stay of discovery, defendants submitted the indictment, but failed to offer any admissible evidence regarding the status of the criminal case. After Magistrate Judge Matsumoto denied their application, defendants have come forward with an undated affirmation from Kenneth Kaplan, the criminal defense attorney who is representing Tuncel in state court, which specifies, among other things, the status of that proceeding, and the potential prejudice to his client if this case is allowed to proceed prior to the completion of the criminal case. Mr. Kaplan asserts that "[a]ny testimony that Tuncel might give in the instant action would substantially implicate his Constitutional rights," and that Tuncel "should assert his Fifth Amendment privilege against self incrimination in the instant federal civil case while the criminal indictment is pending." (Affirmation of Kenneth Kaplan ¶¶ 8, 9).

The Court addresses each of the three pending motions separately below.

## I. Motion to Dismiss by Aziz and Brutus

### A. Standard Governing The Motion to Dismiss

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) should be granted only if it appears beyond doubt that plaintiff can prove no set of facts in support of its claims which would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Therefore, on a motion to dismiss, all factual allegations of the complaint must be accepted as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), and all reasonable inferences must be made in plaintiff's favor. *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985) (citation omitted).

## B. The RICO Civil Conspiracy Claim Against Aziz and Brutus

■ RICO was enacted in 1970 as title IX of the Organized Crime Control Act, Pub.L. 91–452, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961–1968. Of the three statutory sections that are most relevant to civil RICO claims,[4] section 1962(d) is at issue here. 18 U.S.C. § 1962(d) states: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." To establish the existence of a RICO conspiracy, a plaintiff must prove "the existence of an agreement to violate RICO's substantive provisions." *United States v. Sessa*, 125 F.3d 68, 71 (2d Cir.1997) (quotation and internal citation omitted), *cert. denied sub nom., Scarpa v. United States*, 522 U.S. 1065, 118 S.Ct. 731, 139 L.Ed.2d 669 (1998). A RICO conspiracy therefore requires that a plaintiff plead and prove (1) an agreement to commit predicate acts, (2) knowledge that the acts are part of a pattern of racketeering activity, (3) overt acts in furtherance of the conspiracy that must also be predicate acts, (4) causing (5) injury to the plaintiff's business or property. 18 U.S.C. §§ 1962(d), 1964(c); *see also Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) ("A con-spirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense. . . ."); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990); *In re Crazy Eddie Secs. Litig.*, 812 F.Supp. 338, 354 (E.D.N.Y.1993).[5]

Defendants argue that the RICO conspiracy claim must be dismissed as a matter of law because plaintiff "has not pleaded (and cannot plead) any substantive violation of § 1962(c) by Brutus or Aziz," the "complaint has also not pleaded any legally cognizable injury to plaintiff['s] business or property proximately caused by Brutus's or Aziz's nonexistent RICO violation" and finally that plaintiff's allegations of the existence of an "agreement" between the defendants is conclusory and thus unsupported. (Defs. Mem. at 8, 13).

■ Regarding their first argument, defendants misconstrue plaintiff's burden for pleading a RICO conspiracy claim. Contrary to defendants' assertion, plaintiff is not required to plead a cognizable, substantive RICO claim against defendants in order to allege a claim for RICO conspiracy. Rather, with respect to predicate acts, plaintiff must allege only that defendants

4. Section 1961 provides the relevant definitions for RICO claims. 18 U.S.C. § 1961. Section 1962, utilizing the definitions in Section 1961, prohibits four types of conduct. *Id.* § 1962. Section 1964(c) in turn provides a private right of action to any individual damaged in his or her business or property by a violation of Section 1962. *Id.* § 1964(c).

5. The substantive RICO statute, 18 U.S.C. § 1962(c) states that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." When combined with the relevant definitions in Section 1961 and the so-called "standing requirements" of Section 1964(c), Section 1962(c) requires a plaintiff to plead and prove that (1) a person (2) employed by or associated with (3) an enterprise (4) that is engaged in or affects interstate or foreign commerce (5) conducted or participated in the conduct of the enterprise's affairs (6) through a pattern of racketeering activity (7) committed with the required intent and (8) resulting in injury to the plaintiff's business or property. 18 U.S.C. §§ 1961, 1962(c), 1964(c). *See, e.g., Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied sub nom., Moss v. Newman*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *In re Crazy Eddie Secs. Litig.*, 812 F.Supp. at 347, 353–56.

agreed to commit at least two predicate RICO acts, not that defendants themselves committed the two predicate acts, or even that these acts were carried out. Strongest support for this conclusion is found in *Salinas, supra,* 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997), the seminal case interpreting the RICO conspiracy provision. There, the Supreme Court found that § 1962(d) "broadened [traditional] conspiracy coverage by omitting the requirement of an overt act; it did not, at the same time, work the radical change of requiring the Government to prove each conspirator agreed that he would be the one to commit two predicate acts." *Salinas,* 522 U.S. at 64, 118 S.Ct. 469. Moreover, consistent with long-standing principles enshrined in both criminal and civil jurisprudence relating to "conspiracy," a "conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense." *Id.* at 63, 118 S.Ct. 469 (citing *United States v. Socony–Vacuum Oil Co.,* 310 U.S. 150, 253–54, 60 S.Ct. 811, 84 L.Ed. 1129 (1940)). Therefore if "conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide *support,* the supporters are as guilty as the perpetrators." *Id.* at 63, 118 S.Ct. 469 (emphasis added). Indeed, an individual "may be liable for conspiracy even though he was incapable of committing the substantive offense." *Id.* at 64, 118 S.Ct. 469 (citing *United States v. Rabinowich,* 238 U.S. 78, 86, 35 S.Ct. 682, 59 L.Ed. 1211 (1915)).

■ Stated differently, defendants may be liable for aiding and abetting, *i.e.,* supporting, the alleged conspiracy. *United States v. Rastelli,* 870 F.2d 822, 832 (2d

Cir.) ("Case law unequivocally establishes . . . that a defendant may be convicted of a RICO conspiracy violation if he aids and abets the commission of racketeering acts") (citations omitted), *cert. denied,* 493 U.S. 982, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989). It is exactly the "support" role which the complaint alleges defendants played in furtherance of the pattern of racketeering activity alleged. For example, paragraph ninety-eight of the complaint states that Aziz and Brutus, along with the other Prescribing Doctors, and the Tuncel Defendants, "wilfully combined, conspired and agreed to violate 18 U.S.C. § 1962(c)[,] that is to conduct and/or participate, directly or indirectly, in the conduct of the CPT Testing Enterprise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341,[6] based upon the use of the United States mails to submit thousands of fraudulent bills for CPT Tests that were not medically necessary." (Compl.¶ 98). Further, the complaint alleges that, among others, Aziz and Brutus "knew of, agreed to and acted in furtherance of the overall objective of the conspiracy by facilitating the submission to State Farm and other insurance companies of fraudulent bills for CPT Tests that were not medically necessary and were of no diagnostic value." (*Id.* ¶ 99). Accordingly, on its face, the complaint alleges sufficient facts of an agreement to commit predicate acts under 18 U.S.C. § 1962(d).

■ Defendants cite a number of cases which dismiss a RICO conspiracy claim because the courts find substantive RICO claims against the same defendants to be meritless. *See* Defs. Mem. at 9–10 (cita-

---

**6.** To establish a claim for mail and wire fraud, plaintiff must show that defendants used mail or wires to obtain property by means of false or fraudulent pretenses, repre-

sentations or promises or for purposes of executing a scheme to defraud. *See O'Malley v. New York City Transit Authority,* 896 F.2d 704, 706 (2d Cir.1990).

tions omitted). These cases are inapposite because in the complaint, plaintiff has not asserted a substantive RICO claim against Aziz and Brutus (and the other Prescribing Doctors), and therefore the Court is not making a determination—at least on this motion—that those defendants against whom a conspiracy cause of action is pleaded, have (or have not) committed a substantive RICO violation. In any event, as discussed above, even if the Court ultimately makes such a determination, the evidence may still support a finding that Aziz and Brutus are liable for conspiracy under RICO because "the purpose of the agreement is to facilitate commission of a crime" and does not require proof that the crime was actually committed. *Salinas,* 522 U.S. at 65, 118 S.Ct. 469 (citation omitted). As the Supreme Court made clear in *Salinas,* a defendant may properly be found guilty of RICO conspiracy, but not guilty of committing a substantive RICO violation. *Id.* at 64, 118 S.Ct. 469.

■ Defendants' second argument for dismissal of the RICO conspiracy claim fares no better. In *National Organization for Women, Inc. v. Scheidler,* 510 U.S. 249, 252, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994), the Supreme Court "granted certiorari to determine whether RICO requires proof that either the racketeering enterprise or the predicate acts of racketeering were motivated by an economic purpose." The Court held that such proof was not required. It first noted the requirement that "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 256, 114 S.Ct. 798 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The Court then examined the text of the substantive RICO statute, 18 U.S.C. § 1962(c), and concluded that RICO does not require that racketeering enterprise or racketeering predicate acts be accompanied by an economic motive. *Id.* at 259, 114 S.Ct. 798. Therefore, there is plainly no economic motive requirement to establish a RICO enterprise.

■ What plaintiff must allege to state a claim for relief from RICO conspiracy is that it was "injured in [its] business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). To satisfy the "by reason of" language of section 1964(c), plaintiff must demonstrate both injury and causation. To do so, it must allege facts demonstrating both that plaintiff's injury is to its property, and not, for example, physical, emotional or reputational harm, and that plaintiff's injury is proximately caused by the acts constituting the RICO violation. *See Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 265–68, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Ideal Steel Supply Corp. v. Anza,* 373 F.3d 251, 257 (2d Cir.2004). Here, the complaint states that plaintiff suffered damages in excess of $2,500,000 as a result of defendants' conspiracy to commit the predicate acts of mail fraud. (Compl.¶¶ 98–100). Therefore, plaintiff's allegations of injury-in-fact are sufficient to withstand defendants' motion to dismiss the complaint. *Hecht,* 897 F.2d at 25 (although an overt act by itself (whether or not injury ensues) is not a requisite element of a section 1962(d) criminal conspiracy, "a plaintiff in a civil action must show injury from an overt, predicate act in order to establish standing to recover damages") (citation omitted).

■ Finally, defendants contend that plaintiff has failed to plead factual support for an alleged "agreement" neces-

sary to sustain a RICO conspiracy claim. *See generally Vassilatos v. Ceram Tech Int'l, Ltd.,* 1993 WL 177780, at *9 (S.D.N.Y. May 19, 1993) ("complaint must allege some factual basis for a finding of conscious agreement among the defendants") (internal quotation and citation omitted). As part of their argument, Aziz and Brutus assert that plaintiff is required to plead the existence of the "agreement" with particularity under Fed.R.Civ.P. 9(b). Defendants' argument is at odds with precedent in this Circuit on this point. Defendants are correct that for a substantive RICO claim, where the alleged predicate acts involve mail and wire fraud, the allegations must satisfy the particularity requirement of Fed.R.Civ.P. 9(b). *See, e.g., McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992). However, since it is the sufficiency of the conspiracy allegation rather than the underlying fraud allegation which is being challenged, the more liberal standard of Fed.R.Civ.P. 8(a) applies. *See Hecht,* 897 F.2d at 26 n. 4 ("On its face, Rule 9(b) applies only to fraud or mistake, not to conspiracy"). The Second Circuit has held that for a RICO conspiracy claim, the Court must limit its focus to "whether an alleged conspirator knew what the other conspirators were up to or whether the situation would logically lead an alleged conspirator to suspect he was part of a larger enterprise." *United States v. Zichettello,* 208 F.3d 72, 99 (2d Cir.2000), *cert. denied sub nom.,* 531 U.S. 1143, 121 S.Ct. 1077, 148 L.Ed.2d 954 (2001).

■■■ Here, the complaint provides Aziz and Brutus with adequate notice of the alleged agreement between all of the defendants giving rise to the conspiracy claim. It states that "[e]ach defendant knew of, agreed to and acted in furtherance of the overall objective of the conspiracy by facilitating the submission to State Farm ... of fraudulent bills for CPT Tests that were not medically necessary and were of no diagnostic value." (Compl.¶ 99). Moreover, the complaint also contends that defendants were part of a RICO enterprise, called the CPT Testing Enterprise, and that Aziz and Brutus wilfully agreed to participate in that enterprise. (*Id.* ¶ 98). On its face, the complaint therefore makes out a claim of RICO conspiracy against Aziz and Brutus. *Morrow v. Black,* 742 F.Supp. 1199, 1208 (E.D.N.Y.1990) ("The defendant's agreement may be inferred from circumstantial evidence of his status in the enterprise and his knowledge of the wrongdoing") (citing *United States v. Teitler,* 802 F.2d 606, 614 (2d Cir.1986)). Therefore, defendants' motion to dismiss the RICO claim is denied.

Because the RICO claim survives, defendants' argument that the Court lacks subject matter jurisdiction over this action is rejected as meritless.

### C. Common Law Claim of Fraud

Defendants argue that plaintiff's common law fraud claim is meritless because fraud is not pleaded with particularity. Specifically, they state that plaintiff has not set forth any allegations "that Brutus or Aziz made, or are responsible for, false representations to plaintiff." (Defs. Mem. at 16). Defendants further argue that the only false representations are set forth in "boilerplate letters" which were never sent to State Farm and that the "requisite scienter" is not pleaded in the complaint. (*Id.* at 17).

■■■ Fed.R.Civ.P. 9(b) provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." A claim for common law fraud must allege with particularity that defendants (1) made material representations or omissions; (2) which were untrue and known to be untrue; (3) which

were made with the intent to deceive and for the purpose of inducing the plaintiff to act upon them; and (4) that the plaintiff did justifiably rely and was induced thereby to act or refrain from acting to its injury or damage. *See Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir.1999), *cert. denied*, 528 U.S. 1188, 120 S.Ct. 1241, 146 L.Ed.2d 100 (2000). Nonetheless, the Second Circuit has held that "allegations of scienter ... are not subjected to the more exacting consideration applied to the other components of fraud" and thus they can be pleaded conclusorily provided they reveal a sufficient showing of fraudulent intent. *Breard v. Sachnoff & Weaver, Ltd.*, 941 F.2d 142, 143 (2d Cir.1991) (internal quotation and citation omitted); *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir.1994) (under Fed. R.Civ.P. 9(b), plaintiff must plead only a "minimal factual basis for ... conclusory allegations of scienter") (citation omitted). Thus, the scienter element for fraud is satisfied at the pleading stage when the complaint sets forth facts showing both a motive for committing fraud and a clear opportunity for doing so. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994).

■■■■ The complaint alleges that Aziz and Brutus either allow their signature stamp to be placed on, or sign, letters of medical necessity, which are "false and misleading in several respects." (Compl.¶ 40). In paragraphs 41 through 45 of the complaint, the false statements are specified in detail. (*Id.* ¶¶ 41–45). The fact that there might be discrepancies between the language utilized in the letters attached to the complaint, and the language as it is represented to be in the letters described in the complaint, does not affect the Court's conclusion that plaintiff has come forward with sufficient allegations at this stage to withstand defendants'

motion to dismiss. Moreover, regarding defendants' argument that plaintiff has failed to carry its burden relating to scienter, the complaint alleges that Aziz and Brutus had both a motive for committing the fraud, *i.e.*, participating in the defendants' scheme, and a clear opportunity for doing so. Such allegations state a claim for common law fraud against Aziz and Brutus with sufficient particularity. Accordingly, defendants' motion to dismiss the fraud-based claims pursuant to Fed. R.Civ.P. 9(b) is denied.

### D. Unjust Enrichment

■■■■ Under New York law, to sustain a claim for unjust enrichment, a plaintiff must establish "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir.2001) (citation and internal quotation omitted); *Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 19 (2d Cir.1983).

■■■■ Defendants argue that plaintiff's unjust enrichment claim fails because there is no allegation that either Aziz or Brutus received any payment, or other benefit, from State Farm. While defendants are correct that there is no explicit allegation stating that defendants received some portion of the more than $2,500,000 paid by plaintiff to, among others, Tuncel and the PC Defendants, it is reasonable to infer that defendants benefitted from the scheme described in the complaint. As plaintiff notes, Judge Korman recently denied a motion to dismiss a claim for unjust enrichment in a case with facts analogous to those alleged here. *See AIU Ins. Co. v. Olmecs Medical Supply, Inc.*, 04 CV 2934ERK, 2004 WL 3270060 (E.D.N.Y.

Feb. 22, 2005) (unpublished opinion). In that case, Judge Korman held as follows with respect to the unjust enrichment claim, by reasoning which is peculiarly apposite here: "it may be inferred that plaintiffs allege that moving defendants shared in the benefit at the expense of plaintiffs, and that the conveyance of that benefit was unjust such that equity would compel the return of the benefit from defendants to plaintiffs. At this stage of the proceedings, plaintiffs' allegations that members of the enterprise were benefitted is sufficient. If, on summary judgment, plaintiffs are unable to demonstrate that particular defendants benefitted from the scheme, dismissal of the unjust enrichment claim with regard to those defendants would be proper." (Slip. Op. at 27). Since plaintiff has adequately pleaded the necessary elements, defendants' motion to dismiss the unjust enrichment claim is denied.

## II. Objections to Magistrate Judge Matsumoto's Discovery Rulings

 Aziz and Brutus, on the one hand, and the Tuncel Defendants, on the other hand, have filed objections to the May 26, 2005 order issued by Magistrate Judge Matsumoto relating to discovery disputes between the parties. Before turning to the merits of their arguments, the Court addresses the legal standard governing disposition of the objections. When, as here, a magistrate judge decides "a pretrial matter not dispositive of a claim or defense of a party," she must conduct the appropriate proceedings and "when appropriate[,] enter into the record a written order setting forth the disposition of the matter." Fed.R.Civ.P. 72(a). The district court must consider any objections filed by the parties within ten days after entry of the order and must "modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any [nondispositive] pretrial matter ... [where] the magistrate's order is clearly erroneous or contrary to law"). Thus, under the Federal Rules of Civil Procedure, magistrate judges are afforded considerable discretion when issuing orders on nondispositive matters and district courts are limited in their ability to set aside such orders.[7] *Universal Acupuncture Pain Serv., P.C. v. State Farm Mutual Auto. Ins. Co.*, 2002 WL 31296317, at *1 (S.D.N.Y. Oct.10, 2002) ("magistrates are afforded broad discretion in resolving discovery disputes and reversal is appropriate only if their discretion is abused") (citations omitted). The Supreme Court has recognized that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

### A. Objections of Aziz and Brutus

The Order compelled Aziz and Brutus to turn over documents, and respond to interrogatories, concerning four distinct categories of requests. First, plaintiff sought Aziz's and Brutus's tax returns, general ledgers, bank records and documents relating to transactions which gen-

---

**7.** In contrast, when a district court assigns a case to a magistrate judge to hear a pretrial matter dispositive of a claim, she cannot enter an order but rather must enter a report recommending a particular disposition. Fed. R.Civ.P. 72(b). The district court must in turn "make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate's disposition to which specific written objection has been made in accordance with this rule." Fed. R.Civ.P. 72(b).

erated cash. According to State Farm, responses to these demands may demonstrate the extent to which defendants profited from, or gained economic advantage from their employment at medical clinics where they worked, presumably on the Tuncel Defendants' behalf. Second, plaintiff sought documents and information concerning the identity and financial motives of the individuals who managed the medical clinics where defendants worked. For example, plaintiff requested "[a]ll documents relating to any agreements, including but not limited to leases, contracts and rental agreements, that you have had with any person who has provided you with billing, management and tax preparation services and any payments made to or received from any such person." (Defs. Mem. of Law Exh. D). Third, plaintiff demanded information concerning defendants' telephone records and e-mail addresses in an effort to establish the nature and scope of their relationships with the other "co-conspirator" defendants. Fourth, plaintiff requested documents and information relating to the identity of all State Farm insureds for whom defendants ordered, and the Tuncel Defendants performed, CPT Tests.

▓▓▓ With one exception noted below, Magistrate Judge Matsumoto's decision to compel defendants to respond to State Farm's discovery is not clearly erroneous or contrary to law. Regarding the first category of documents-financial records, including tax returns of the defendants relating to transactions which generated cash-the Court finds, consistent with the Order, they may be relevant to establishing that defendants profited from their willingness to order CPT Tests. To the extent that defendants argue they should not be required to disclose these documents and information based on the confidentiality of the information, including privacy regulations issued under HIPPA, this is not a persuasive basis for refusing production because, at minimum, the parties are free to enter into confidentiality agreements preventing disclosure outside the litigation context. *See generally In re Agent Orange Product Liability Litig.*, 821 F.2d 139, 144–45 (2d Cir.1987). With respect to the second category of documents, the Court agrees with Magistrate Judge Matsumoto that such information may be relevant to establish whether defendants ordered CPT Tests to be performed by the Tuncel Defendants even though they knew they had no medical purpose. At this stage of the litigation, moreover, it is well established that relevancy is defined broadly and thus the Order cannot be viewed as clearly erroneous or contrary to law. *See* Fed.R.Civ.P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party"); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (relevance for discovery purposes is an extremely broad concept which "has been construed … to encompass any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that is or may be in the case"). Regarding defendants' phone records and e-mail addresses, the Court modifies the Order to limit the required production only to those communications made between defendants and any other named defendant. With respect to the information concerning patients for whom defendants ordered CPT Tests, defendants resist production primarily on the ground that disclosing these documents "would be unduly burdensome" in the sense of inflicting economic harm on them. Fed.R.Civ.P. 26(c) permits a court to "make any order which justice requires to protect a party or person from … undue burden or expense." The moving party

bears the burden of demonstrating the necessity for such an order. *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 220 F.R.D. 30, 33 (S.D.N.Y.2003) (citing cases). Here, defendants have simply asserted in conclusory fashion that obtaining this information may be timely and costly. However, that is not a sufficient ground to overcome plaintiff's relevant discovery requests. Therefore, the objections of Aziz and Brutus to the Order are sustained in part and overruled in part.

### B. Objections of the Tuncel Defendants

 In this case, Magistrate Judge Matsumoto denied the Tuncel Defendants' application for a stay of discovery based on the following:

> Of the Tuncel defendants, only Tuncel has been indicted and, consequently, is the only defendant whose Fifth Amendment privilege against self-incrimination must be considered. First, because Tuncel failed to demonstrate that the issues in the instant civil action sufficiently overlap with those in the pending criminal matter, Tuncel could not demonstrate that he would suffer prejudice in the absence of a stay. Second, except for stating that the criminal matter is still pending, Tuncel was not able to provide information about the status of the criminal matter, including whether a date has been set for the criminal trial, and was thereby requesting an indefinite stay. Third, plaintiff has a legitimate interest in the expeditious resolution of its civil case and is likely to suffer prejudice as a result of a stay because Tuncel is alleged to be central to the defendants' alleged scheme. A stay with respect to Tuncel would, in effect, impede discovery related to other parties in this action. Fourth, the private interests of and burden on Tuncel, do not outweigh the burdens to plaintiff, given that Tuncel has already opted against asserting his Fifth Amendment privilege against self-incrimination by answering the complaint and responding to plaintiff's discovery requests, without invoking the privilege. Fifth, given the Tuncel's allegedly central role in this litigation, a stay would thwart the Court's interest in an expeditious and efficient discovery process and moving the case toward resolution, whether through settlement, dispositive motions or trial. Sixth, public policy favors proceeding with this civil action to the extent that plaintiff seeks, through this action, to curtail insurance fraud and unnecessary medical tests which may play a role in raising the cost [of] insurance.

 After a careful review of the record, the Court finds nothing clearly erroneous nor any abuse of discretion with respect to this part of the Order. Each of the six reasons given by Judge Matsumoto to support her ultimate conclusion are supported by the record.[8]

In particular, and as discussed above, while the Tuncel Defendants have submitted Mr. Kaplan's affirmation as part of their pending objections, they did not sub-

---

8. As this Court noted in *United States v. Private Sanitation Industry Assoc. of Nassau/Suffolk, Inc.*, 811 F.Supp. 802, 805 (E.D.N.Y. 1992), "[g]ranting a stay of a civil proceeding to await the outcome of a pending parallel criminal investigation is appropriate when the interests of justice seem to require such action." (citation and internal quotation omitted). "In making this determination, the court should balance: (1) the private interest of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendant; (3) the convenience to the courts; (4) the interest of persons not parties to the civil litigation; and (5) the public interest". *Id.* (citations omitted).

mit it to Magistrate Judge Matsumoto in support of their motion for a stay of discovery. The Tuncel Defendants have failed to explain why they did not do so, and also did not disclose this fact to the Court. This alone compels the Court to affirm the Order as it relates to the Tuncel Defendants because, based on the evidence before it, Magistrate Judge Matsumoto's decision was not clearly erroneous.

While the Court is generally not precluded from considering additional evidence not submitted by a party to a magistrate judge when reviewing a report and recommendation issued by such judge on a dispositive motion, there is nothing in Rule 72(a) of the Federal Rules of Civil Procedure which states that it may do so on a non-dispositive issue, such as that decided here. *Compare* Fed.R.Civ.P. 72(a) (disposition of non-dispositive matters by magistrate judges) *with* Fed. R.Civ.P. 72(b) (disposition of dispositive matters by magistrate judges, and stating that the "district judge to whom the case is assigned shall make a de novo determination upon the record, *or after additional evidence,* of any portion of the magistrate judge's disposition to which specific written objection has been made") (emphasis added). The Tuncel Defendants have not cited any case, and the Court has not found one, in which Rule 72(a) objections are sustained based on evidence not presented to the magistrate judge.

Moreover, even if the Court considers Mr. Kaplan's affirmation, it does not support the Tuncel Defendants' position. Mr. Kaplan states in conclusory fashion that Tuncel "should not be required to provide deposition testimony or answer interrogatories until the resolution of his pending criminal indictment." (Kaplan Aff. ¶ 7). However, Magistrate Judge Matsumoto found that Tuncel "has already opted against asserting his Fifth Amendment privilege against self-incrimination by," *inter alia,* "responding to plaintiff's discovery requests, without invoking this privilege." (Order at 2). The Tuncel Defendants have not submitted any evidence to contradict this finding that Tuncel would not be prejudiced if the Court did not grant the stay. Accordingly, the objections of the Tuncel Defendants are overruled.

### CONCLUSION

For the foregoing reasons, the motion of defendants Michael Aziz and Anne Brutus to dismiss the complaint is denied, the objections of Aziz and Brutus to Magistrate Judge Matsumoto's decision to deny their motion for a protective order on certain discovery are sustained in part and overruled in part, and the objections of defendants CPT Medical Services, P.C., Hoss Medical Services, P.C., Huseyin Tuncel, M.D., Victor Mariani, M.D. and Mark Slamowitz, D.C. to Magistrate Judge Matsumoto's decision to deny their motion for a stay of discovery, are overruled.

SO ORDERED.