OPINION OF THE COURT
Diane A. Lebedeff, J.
These two cases were consolidated for trial and center upon a no-fault health services provider’s claim for compensation for charges for an electrical diagnostic test identified as current perception threshold testing, also known as sensory nerve conduction threshold testing. Contending that compensation must be denied for these no-fault claims, defendant advances two novel arguments: (1) the medical tests are not compensable under Medicare, and (2) the medical tests are so questionable that such testing constitutes “provider fraud.”
CPT and sNCT Testing
To briefly address the nature of current perception threshold testing (CPT) and sensory nerve conduction threshold testing (sNCT), CPT and sNCT procedures assess the function of a tested sensory nerve. The test device is a noninvasive electrodiagnostic test. The tester affixes three pads to designated spots on skin over a nerve pathway and delivers electrical charges on an upward scale until the patient reports feeling a sensation. Such pads may be placed along various nerve pathways on upper or lower limbs or both. The results are recorded on a table format and the device, comparing the readings obtained to an internal database of readings, delivers a printout of an analysis and a statement reporting whether the patient’s sensory perception is normal or the degree to which perception is elevated or depressed.
The federal Centers for Medicare and Medicaid Services, a division of the federal Department of Health and Human Services, issued a number of statements regarding CPT and sNCT, which have been addressed by counsel and of which *659 the court takes judicial notice. As of October 1, 2002, CPT and sNCT were classified as procedures not compensable under Medicare (68 Fed Reg 44088-03, 44089 [2003] [“The available scientific evidence is not adequate to demonstrate the accuracy of sNCT ... as compared to nerve conduction studies . . . We conclude that the scientific and medical literature does not demonstrate that the use of sNCT to diagnose sensory neuropathies in Medicare beneficiaries is reasonable and necessary”]). The Centers for Medicare and Medicaid Services also issued an extended analysis, including a literature review, explaining the basis for this policy and found it most significant that CPT and sNCT results have, to date, led to no changes in patient management, albeit such testing might offer a type of testing sensitivity appropriate to patients with sensory neuropathy resulting from diabetes or a genetic disorder known as Fabry’s disease (Decision Mem of Centers for Medicare and Medicaid Services, Electrodiagnostic Sensory Nerve Conduction Threshold, CAG-00106N, Feb. 14, 2002 [reporting experts in neuropathy “were uniformly unaware of a use for sNCT that would alter patient management” and accordingly it could not be found “clinically effective”]).[1] However, the review closed with the observation that “sNCT merits further study and we encourage investigators to conduct well-designed clinical trials to demonstrate the clinical effectiveness of the test” (id.).
Alternative tests which provide substantially similar information to that produced by CPT or sNCT regarding the status of nerves include the much simpler pin prick test and, providing information also on the physical structures which might impinge upon nerves, nerve conduction velocity tests (NCV), electromyography tests (EMG) and magnetic resonance imaging tests (MRI). All of these alternative tests are universally *660 recognized as informative by experts, as stated by defendant’s expert who testified at the trial. It is noted that one no-fault insurer has contended that ordering CPT or sNCT after performing an NCy EMC or MRI is a fraud on such insurer (see, based on such facts, State Farm Mut. Auto. Ins. Co. v CPT Med. Servs., P.C., 375 F Supp 2d 141 [ED NY 2005, Glasser, J.] [$2.5 million damage claim in complaint asserting CPT or sNCT procedures were done with sole purpose of generating fees, claims raised under Racketeer Influenced and Corrupt Organizations Act (18 USC § 1961 et seq.), as well as fraud and unjust enrichment theories]).
Because of the limited nature of the two defenses advanced, the court is not called upon to rule upon any other potential issues, such as (1) whether a CPT or sNCT may be ordered and/or administered by a chiropractor,[2] (2) whether the person performing the test was not an employee of the health services provider filing the claim, but was an independent *661 contractor,[3] or (3) that such test is too experimental or novel to be compensable.[4]
No-Fault Insurer’s “Medicare Defense”
The defendant no-fault insurer timely denied the subject claims for CPT or sNCT procedures for identical reasons. Each denial recited the insurer’s position that such testing lacks “scientific and clinical evidence that would deem this service medically necess[ary]” and referred to the determination of the federal Centers for Medicare and Medicaid Services, that such testing was not compensable under Medicare.
The court must reject the insurer’s contention that the programmatic noncompensability under Medicare bars submission of a claim under the no-fault program. To adopt that argument would require judicial rewriting of New York’s no-fault statute to insert a reference to Medicare standards. The no-fault statute references only a single bright line standard for compensable health care services, which encompasses workers’ compensation fee schedules (Insurance Law § 5108 [a] [no-fault charges “shall not exceed the charges permissible under the schedules prepared and established by the chairman of the workers’ compensation board for industrial accidents, except (to the extent) unusual procedures or unique circumstances justify the excess charge”], [c] [“No provider of health services . . . may demand or request any payment in addition to the (authorized) charges”]).
*662 Given the clarity of the no-fault statute, the statutory language bars a “Medicare defense” (Roth v Michelson, 55 NY2d 278, 283 [1982] [absent ambiguity, statute to be interpreted literally]; McKinney’s Cons Laws of NY, Book 1, Statutes § 92, Comment [the “intention of the Legislature is first to be sought from a literal reading of the act itself’]; 97 NY Jur 2d, Statutes § 102 [2006] [“Determining legislative intent; unambiguous provisions”; “where statutory language is clear and unambiguous, the court must give effect to the plain meaning of the words and apply it in accordance with its express terms”]). If this argument is to be further advanced, it must be presented to the Legislature, the Insurance Department or the Workers’ Compensation Board. A health services provider’s eligibility for compensation under Medicare is not, standing on its own, a cognizable reason to deny payment of a no-fault claim and this argument is rejected.
No-Fault Insurer’s “Fraud Defense” as Applicable to
a Health Services Procedure
The defendant then urges that the use of CPT or sNCT should be barred as constituting “provider fraud.” Defendant contends that “provider fraud” should be treated in the same manner as a defense of noncoverage, which is not waived by a failure to assert it in a timely denial (Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195, 202 [1997]; Presbyterian Hosp. in City of NY. v Maryland Cas. Co., 90 NY2d 274, 283 [1997]). On this basis, defendant argues that a defense of “fraud” by a health services procedure may be advanced at trial even if not set forth in a timely denial.
At the outset, because of the loose use of the term “fraud” in the no-fault area, care must be taken to distinguish what “fraud” is claimed to be at issue. For example, the “staged accident fraud” defense actually poses an issue of noncoverage because — under both no-fault concepts and typical automobile policy provisions — insurance coverage is limited to an “accident,” and does not necessarily pose an issue of fraud (V.S. Med. Servs., P.C. v Allstate Ins. Co., 11 Misc 3d 334 [Civ Ct, Kings County 2006, Bluth, J.] [with extensive review of case law and rejecting fraud clear; and convincing burden of proof]), and the “provider fraud” of not being a properly licensed health services facility truly poses an issue of not being eligible to receive reimbursement, rather than fraud (State Farm Mut. Auto. Ins. *663 Co. v Mallela, 4 NY3d 313, 320 [2005]; 11 NYCRR 65-3.16 [a] [12] [“A provider of health care services is not eligible for reimbursement under section 5102 (a) (1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement”]). As these examples illustrate, a “fraud” defense in the no-fault area often actually refers to a challenge to coverage or eligibility for reimbursement.
Here, rather than any independent fraud, present is a defense of “excessive treatment” by a medical provider, which involves questioning the health services provider’s bill. A question of medically inappropriate treatment cannot be readily equated to a coverage issue (Central Gen. Hosp. v Chubb Group, supra, 90 NY2d at 199 [“treatment being deemed excessive by the insurer . . . would not ordinarily implicate a coverage matter”]).
On questions regarding medical necessity in the no-fault area, the issue of appropriateness of treatment is one which must be raised in the course of claims processing. The claim form itself gives rise to a presumption of medical necessity (Stephen Fogel Psychological, P.C. v Progressive Cas. Ins. Co., 7 Misc 3d 18, 22 [App Term, 2d Dept 2004] [“presumption of medical necessity . . . attaches to the claim form”]). Any objection to a lack of medical necessity must be stated in a claim denial form, and must be “supported by competent evidence such as an independent medical examination, a peer review or other proof which sets forth a factual basis and a medical rationale for denying the claim” (Healing Hands Chiropractic, P.C. v Nationwide Assur. Co., 5 Misc 3d 975, 976 [Civ Ct, NY County 2004, Kern, J.] [also involving a claim for CPT compensation]; see also, decisions following trial, Nir v Allstate Ins. Co., 7 Misc 3d 544 [Civ Ct, Kings County 2005, Matos, J.], and CityWide Social Work & Psychological Servs. v Travelers Indem. Co., 3 Misc 3d 608 [Civ Ct, Kings County 2004, Battaglia, J.]). At all stages, the insurer bears the burden of proof on a medical necessity defense (see Healing Hands Chiropractic, P.C. v Nationwide Assur. Co., supra; see also Lumbermens Mut. Cas. Co. v Inwood Hill Med., P.C., 8 Misc 3d 1014[A], 2005 NY Slip Op 51101[U], *6 [Sup Ct, NY County 2005, Ramos, J.] [“failure to appear (for a scheduled examination under oath or independent medical examination) rebuts the presumption of the medical necessity . . . (but) does not require dismissal of the action” on medical necessity grounds]).
It is the conclusion of this court that this challenge to a health services procedure cannot be cloaked as one of fraud. Moreover, *664 even if looking at the record as a whole for those “Madges of fraud permitting an inference of fraudulent intent” (Nonas v Romantini, 271 AD2d 292, 292 [1st Dept 2000] [a fraudulent conveyance case]), the fact that CPT or sNCT is not compensable by Medicare is but a single factor and is insufficient without more to establish fraudulent intent (Spires v Mihou, 13 AD3d 1056, 1057 [4th Dept 2004] [“fraudulent intent is rarely established by direct proof, but we nevertheless conclude that there are insufficient ‘badges of fraud’ in this case from which such intent may be inferred”]; compare Brody v Pecoraro, 250 NY 56, 61 [1928 Cardozo, Ch. J.] [“The traditional badges of fraud are spread over the transaction in prodigal profusion”]; see Inwood Hill Med. v Allstate Ins. Co., 3 Misc 3d 1110[A], 2004 NY Slip Op 50565[U] [Civ Ct, NY County 2004, Hagler, J.] [an extended analysis of fraud allegations in the context of a no-fault summary judgment motion]). Most significantly, given that the tendered defense fits suitably within the structure of analysis for the treatment of a medical necessity issue, attempting to cast this attack on a health services bill as exempt from the need for a timely articulated denial appears to be a step which would fly in the face of a clear caution issued by the Court of Appeals (Presbyterian Hosp. v Maryland Cas. Co., supra, 90 NY2d at 285-286 [“The tradeoff of the no-fault reform still allows carriers to contest ill-founded, illegitimate and fraudulent claims, but within a strict, short-leashed contestable period and process designed to avoid prejudice and red-tape dilatory practices. To string out belated and extra bites at the apple is . . . unfounded under the statutes, regulations and policies” and “we discern no justification for penalizing injured parties or their provider assignees by recognizing disincentives against prompt attention and action (to timely claims processing)”]).
Turning to the evidence presented appropriate to medical necessity, the defense expert’s testimony failed to address the medical status of the patients at issue and failed to present any proof of inappropriateness of the testing utilized based upon an individual review of each claim. New York courts insist that no-fault insurers focus on the facts regarding the individual claimant in these cases, whether involving first-party or third-party claims for compensation for medical procedures, because the governing legislation requires a grant of “full compensation for economic loss” (Oberly v Bangs Ambulance, 96 NY2d 295, 298 [2001]; Insurance Law § 5101). No evidence was presented that the bills were inappropriate in amount for the procedures at issue.
*665 Accordingly, in relation to this claim for compensation, this “provider fraud” argument is rejected as a disguised attempt to avoid the strictures regarding claims processing contained in the Comprehensive Motor Vehicle Insurance Reparations Act and is held not to be equivalent to a viable challenge to coverage or eligibility for reimbursement. Rather, it is found proper to consider the subject claims under the standards applicable to a medical necessity issue and — applying a fair preponderance of the credible evidence standard of proof — no cognizable reason to deny or diminish payment has been established by the insurer.
Conclusion
Given the foregoing and the parties having agreed that there were assignments of benefits to plaintiff and that completed copies of proofs of claim were mailed and received by the defendant, but not paid or denied within 30 days of receipt, the plaintiff has established his case (11 NYCRR former 65.15 [g] [3]).
Accordingly, judgment in each case shall issue for the plaintiff. Based upon the court’s experience and observation, the reasonable value of the services of plaintiffs attorney fees exceeds the amount permitted under Insurance Law § 5106 and it is determined that plaintiff is entitled to attorney fees and statutory interest pursuant to such provision.

. This conclusion was also reached by others. In 1999, an article in the American Association of Electrodiagnostic Medicine’s journal Muscle & Nerve reviewed available literature and concluded that “the information in [health services] publications is insufficient to make conclusions about the usefulness of this form of sensory testing at the present time” (Neurotron, Inc. v American Assn. of Electrodiagnostic Medicine, 189 F Supp 2d 271, 273 [D Md 2001], affd 48 Fed Appx 42 [4th Cir 2002] [dismissing the manufacturer’s product disparagement and Lanham Act claims]). In 1997, the Pennsylvania Blue Shield program issued a statement that CPT had “no proven clinical utility” and was not compensable (Neurotron Inc. v Medical Serv. Assn. of Pennsylvania, Inc., 254 F3d 444, 447 [3d Cir 2001] [dismissing the manufacturer’s product disparagement claim]).

. As to plaintiffs assignor Ostroviak, the record contained a prescription form for the test issued by a chiropractor; as to both plaintiffs assignors, the test was administered by a chiropractor. The defendant has advanced no argument that CPT or sNCT is a procedure which the State Board of Regents and the State Board for Chiropractors do not permit a chiropractor to “prescribe” nor an electrical device which a chiropractor may not “utilize” (Education Law § 6551 [3]). As cogently pointed out by Judge Markey in ABC Med. Mgt. v GEICO Gen. Ins. Co. (3 Misc 3d 181, 185 [Civ Ct, Queens County 2003]), a ready answer to such an inquiry may be found in consulting the list of what is permitted, as well as a review of the Workers’ Compensation Law fee schedules incorporated into the no-fault program which lists procedures for which a chiropractor may seek compensation (12 NYCRR 348.2 [a]).
It is noted that a health care services provider performing a procedure at the request of a chiropractor may file a direct claim for no-fault compensation with an insurance company provided the service is one which a chiropractor may prescribe and the service is medically necessary (Omega Diagnostic Imaging, P.C. v State Farm Mut. Auto Ins. Co., 8 Misc 3d 715 [Civ Ct, Kings County 2005, Nadelson, J.]). The insurer here has failed to preserve a “fee schedule” defense for trial purposes, because that defense was not asserted in the subject claim denials (Jamil M. Abraham M.D. P.C. v Country-Wide Ins. Co., 3 Misc 3d 130[A], 2004 NY Slip Op 50388[U], *2 [App Term, 2d & 11th Jud Dists 2004] [“we have held that by virtue of a timely claims denial an insurer is entitled to interpose the (fee schedule) defense” and “establish that . . . charges exceeded that permitted by law by evidentiary proof’]).

. A defense that a health service was not provided by the health services provider or its employees, but by an independent contractor, would bar a suit because the plaintiff then would not be “a ‘provider’ within the meaning of the insurance regulations” and such defense is “nonwaivable and not subject to the preclusion rule” (Rockaway Blvd. Med. P.C. v Progressive Ins., 9 Misc 3d 52, 54 [App Term, 2d Dept 2005]). The chiropractor who administered the tests at issue was called in by plaintiffs office to conduct the tests and brought his own testing machine, facts generally indicative of independent contractor status, but his statement that he was plaintiffs employee was not challenged.

. Absent any argument which might spring from policy language or have another basis, objecting to health services as experimental or of dubious value gives no rise to an independently cognizable objection, distinct from a medical necessity argument (12 Couch on Insurance 3d § 171:66 [“Requirement of Reasonable Relation to Treatment Prescribed”; compensable no-fault medical expenses may include “expenses for innovative medical procedures warranted by circumstances” and such “charges should be reviewed on a case-by-case basis because of the unique nature and speculative value of the service rendered. The critical issue here is the value of the service performed in light of the claimant’s condition”]).