Matter of Liberty Mut. Fire Ins. Co. v Wilson (2025 NY Slip Op 51076(U))

[*1]

Matter of Liberty Mut. Fire Ins. Co. v Wilson

2025 NY Slip Op 51076(U)

Decided on July 6, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 6, 2025
Supreme Court, Kings County

In the Matter of the Application of Liberty Mutual Fire Insurance Company, Petitioner,

against
Ikey Wilson, Respondent.

Index No. 502949/2025

Callinan & Smith LLP, Wantagh (Steven Daniel Levy of counsel) for Petitioner. 
Wellerstein & Associates, P.C., Maspeth (Alfred Odom of counsel) for Respondent.

Aaron D. Maslow, J.

The following numbered papers were used on this motion: NYSCEF Document Numbers 1-34.
Upon the foregoing papers, having heard oral argument, and due deliberation having been had [FN1]
, the within matter is determined as follows.
Issue
Whether the Court should grant Petitioner Liberty Mutual Fire Insurance Company's ("Petitioner Liberty Mutual") Petition pursuant to CPLR 7503 (c) to permanently stay the uninsured/underinsured/SUM motorist arbitration demanded by Respondent Ikey Wilson ("Respondent Wilson"), on the grounds that (1) the underlying motor vehicle accident was a staged or intentional event and thus not a covered occurrence under the policy, and/or (2) Respondent Wilson violated the fraud provision of the policy; or, in the alternative, whether a [*2]framed-issue hearing should be held to determine the threshold issue of coverage and fraud.
Introduction
Petitioner Liberty Mutual moves for an order and judgment, as set forth in the notice of petition in this CPLR Article 75 special proceeding:
i. Pursuant to CPLR 7503 (c) permanently staying the uninsured/underinsured/SUM motorist arbitration as Respondent Ikey Wilson is not eligible for coverage under the Liberty Mutual Fire Insurance Company policy of insurance as there was never an agreement between the parties to arbitrate as the underlying incident was not the product of a covered event in that it was the product of a staged and/or caused intentional event;
ii. Pursuant to CPLR 7503 (c) permanently staying the uninsured/underinsured motorist/SUM arbitration as Respondent Ikey Wilson is not eligible for coverage under the Liberty Mutual Fire Insurance Company policy of insurance as Respondent violated the Fraud provision of the policy of insurance issued by Liberty Mutual Fire Insurance Company;
iii. In the alternative, for an order setting this matter down for a framed-issue hearing to determine (1) if Respondent Ikey Wilson is eligible/qualifies for coverage under the policy of insurance issued by Liberty Mutual Fire Insurance Company; (2) if the underlying incident of August 17, 2023 was the product of a covered event; and/or (3) if Respondent Ikey Wilson breached the Fraud provision of the underlying policy of insurance and allowing Petitioner to conduct any and all necessary discovery in aid of the framed-issue hearing; and/or
iv. In the alternative, for an order temporarily staying the uninsured/underinsured/SUM arbitration should this Court direct that this matter proceed to arbitration pending the completion of all necessary pre-arbitration discovery; and
v. For such other and further relief as to this Court may deem just, proper, and equitable. (See NYSCEF Doc No. 2 at 1-2.)
Background
On August 17, 2023, Respondent Wilson was a passenger in an Uber that was involved in a hit-and-run accident in Hempstead, New York. A police accident report confirms that the Uber was rear-ended by an unknown vehicle that fled (see NYSCEF Doc No. 4). Respondent Wilson filed a demand for uninsured motorist arbitration ("UM arbitration")[FN2]
on February 26, 2024. Petitioner Liberty Mutual denied the claim on October 17, 2024, claiming that the accident was staged. Petitioner Liberty Mutual filed the instant petition on January 27, 2025, to stay arbitration.
Petitioner Liberty Mutual's Position
Arbitrator Richard Kokel ("Arbitrator Kokel") issued a No-Fault Insurance Arbitration Award on April 14, 2025, finding that the subject accident was staged, and that Respondent Wilson's injuries did not arise from a legitimate accident. Arbitrator Kokel relied on [*3]Examination Under Oath ("EUO") testimonies, a video recording, and an affirmation by Petitioner Liberty Mutual's investigator, Gina Lupo ("Ms. Lupo"), noting inconsistencies and falsehoods in witness statements. Petitioner Liberty Mutual argues that the Court should apply collateral estoppel based on the arbitration award, barring Respondent Wilson from relitigating the issue of whether the accident was staged. Collateral estoppel may be applied to No-Fault arbitration awards, even if the awards have not been judicially confirmed (see Martin v Geico Direct Ins., 31 AD3d 505, 506 [2d Dept 2006]). As seen in Lobel v Allstate Ins. Co. (269 AD2d 502, 502 [2d Dept 2000]), the Second Department dismissed an action for No-Fault benefits in an arbitration between the plaintiff's assignee/medical provider and six defendants in that it had been previously determined that there was no causation as to the claimed injuries. Accordingly, Petitioner Liberty Mutual asserts that even though the arbitration award is not judicially confirmed, it is binding for collateral estoppel purposes.
Petitioner Liberty Mutual also contends that its petition in this special proceeding is timely because it raises a coverage defense (that the accident was staged), and not just a procedural challenge to the arbitration. Statutory time limits do not apply to the defense of non-coverage (see Government Employees Ins. Co. v Hehl, 203 AD2d 570 [2d Dept 1994]).[FN3]
Coverage defenses are also not bound by the 20-day limit in CPLR 7503 (c).[FN4]
 Moreover, Petitioner Liberty Mutual asserts that there are discovery issues, claiming that discovery is incomplete. For example, Respondent Wilson failed to provide contact information for a prior parole officer and Corey Jones ("Mr. Jones"), who was also involved in events leading up to the accident. Respondent Wilson also failed to provide a Stand-Up MRI authorization. Accordingly, Petitioner Liberty Mutual demands completion of discovery if a framed issue hearing is ordered.
Respondent Wilson's Opposition
Respondent Wilson asserts that the burden of proof has not been met because Petitioner Liberty Mutual must prove by clear and convincing evidence that the accident was staged. To interpose a defense of staged accident fraud, the carrier must establish the fact that, or the founded belief that, the alleged injuries do not arise out of an insured accident (see Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195 [1977]). The clear and convincing standard of [*4]proof has been applied to the claim that an accident was a staged accident (e.g. JSI Expert Serv. v Liberty Mut. Ins. Co., 7 Misc 3d 1009[A], 2005 NY Slip Op 50513[U] [Civ Ct, Kings County 2005]). According to Respondent Wilson, Petitioner Liberty Mutual is not entitled to a stay of arbitration based on the argument that the accident was a staged accident. A party seeking a stay of arbitration has the prima facie burden of showing the existence of sufficient evidentiary facts to establish a preliminary issue which would justify the stay (see Matter of Government Empls. Ins. Co. v Tucci, 157 AD3d 679 [2d Dept 2018]). Thus, Respondent Wilson asserts that Petitioner Liberty Mutual's allegations are speculative, relying on unsubstantiated hypotheses without admissible evidence.
Respondent Wilson also asserts that the affirmation from Petitioner Liberty Mutual's Senior Special Investigator, Ms. Lupo, is deficient since Ms. Lupo offers vague descriptions of a broader fraud scheme (including Uber rides, gift cards, and mystery minivans) without linking Respondent Wilson or this accident directly (see NYSCEF Doc No. 3).[FN5]
According to Respondent Wilson, Ms. Lupo's claims lack specificity and evidentiary support because she offers no data, vehicle details, or credible investigative sources. Moreover, the video footage is inadmissible because the dashcam footage is unauthenticated. A video recording which has not been properly authenticated is inadmissible (see Rosa v Gordils, 211 AD3d 1060 [2d Dept 2022]). Even if considered, Respondent Wilson asserts that the video footage only shows a rear-end collision and startled passengers; it does not demonstrate fraud.
More specifically, Ms. Lupo asserts in NYSCEF Doc No. 3 that this incident fits a pattern of staged accidents targeting Uber vehicles that occur shortly after the trip starts and involve minor collisions; the perpetrators flee, and the occupants later seek extensive No-Fault medical treatment. For example, the Uber trip in question in this case was ordered with a gift card and originated from an account created the same day, an additional red flag according to Ms. Lupo. Moreover, Petitioner Liberty Mutual alleges that Respondent Wilson and Mr. Jones, who were both in the Uber vehicle together, provided false or inconsistent testimony including conflicting accounts of how and why they were in Long Island; discrepancies over how the Uber was booked and who booked it; false claims about seatbelt usage and injuries sustained; and claims contradicted by video footage, particularly the vehicle being in motion at the time of impact and lack of visible injury.[FN6]
Accordingly, it is Petitioner Liberty Mutual's position that the [*5]incident was staged, and that both Respondent Wilson and Mr. Jones participated in the fraud by providing materially false statements and pursuing No-Fault benefits for injuries that were either non-existent or exaggerated.
To negate Ms. Lupo's statements above, Respondent Wilson asserts that his and other witness' statements were consistent when context is considered, and that misremembered minor facts, such as which stores were open or whether the car was moving, does not equate to fraud. The petition was also untimely, because under CPLR 7503 (c), Petitioner Liberty Mutual had twenty days from February 26, 2024 to move to stay arbitration (by March 18, 2024). The Petition was filed on January 27, 2025, being over ten months late. Accordingly, according to Respondent Wilson, any right to stay arbitration is waived. Finally, discovery has already been completed, especially because Respondent Wilson already sat for two Examinations Under Oath ("EUOs") and produced medical records.[FN7]

Discussion
Coverage and Fraud Determinations
"A deliberate collision caused in furtherance of an insurance fraud scheme is not a covered accident" (Matter of Metro Med. Diagnostics v Eagle, 293 AD2d 751, 752 [2d Dept 2002]). There is no coverage even if it is alleged that parties are "innocent" to the alleged perpetration of the intentional event (see Matter of Allstate v Massre, 14 AD3d 610 [2d Dept 2005]; State Farm Mut. Auto. Ins. Co. v Laguerre, 305 AD2d 490 [2d Dept 2003]; Matter of Government Empls. Ins. Co. v Shaulskaya, 302 AD2d 522 [2d Dept 2003]). An insurance carrier is not precluded from raising, at any time, that an automobile incident was not the product of a covered event, as coverage is a non-waivable matter (see Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195; Zappone v Home Insurance Company, 55 NY2d 131 [1982]).
"The purpose of an uninsured motorist enforcement is to help effectuate New York's compulsory automobile liability insurance scheme 'by providing coverage to injured persons who suffer automobile accident injuries at the hands of financially irresponsible motorists' " (Matter of Global Liberty Ins. Co. of NY v Eveillard, 171 AD3d 749, 750-751 [2d Dept 2019]). "With respect to an uninsured motorist endorsement, whether an occurrence qualifies as an accident is determined by whether the occurrence was an unexpected and unintended event from the perspective of the insured" (id. at 751). "[A]n intentional and staged collision caused in the furtherance of an insurance fraud scheme is not a covered accident under a policy of insurance" (id.). The party who seeks a stay of arbitration based upon a lack of coverage bears the initial [*6]burden of showing the existence of sufficient evidentiary facts to establish a preliminary issue which would justify the stay (see id.). In Matter of Global Liberty Ins. Co. of NY, the petitioner, Global Liberty Insurance Company of New York, "set forth evidentiary facts and submitted documentary evidence sufficient to establish a preliminary issue as to whether the collision giving rise to the claim for uninsured motorist benefits was an accident or an intentional act . . . " (id.). However, here, Petitioner Liberty Mutual has not submitted such evidence.
An insurer can premise its defense that a collision was not an accident without being required to prove that it was the product of fraud, which would require proof of all of the elements of fraud, including scienter; as such, the defense requires proof by a preponderance of the evidence, not by clear and convincing evidence (see V.S. Med. Servs., P.C. v Allstate Ins. Co., 25 Misc 3d 39 [App Term, 2d, 11th & 13th Jud Dists 2009], affg 11 Misc 3d 334 [Civ Ct, Kings County 2006]). However, as the party seeking a stay of arbitration, Petitioner Liberty Mutual bears the burden of showing the existence of sufficient evidentiary facts to establish that the subject collision was not a true accident (see Matter of Government Empls. Inc. Co. v Tucci, 157 AD3d 679).
Further, Respondent Wilson raises legitimate evidentiary concerns such as the dashcam footage which was never authenticated. In Rosa v Gordils (211 AD3d at 1060), "the plaintiff was a passenger in a vehicle owned and operated by the defendant Serena Gordils, which collided with a vehicle owned and operated by the defendant Wen Xu at an intersection in Queens." "In August 2019, the plaintiff commenced [an] action against Wen Xu and Gordils to recover damages for personal injuries she allegedly sustained in the accident" (id.). Vehicle and Traffic Law § 1141 was implicated in the Rosa case.[FN8]
However, Wen Xu, the defendant, "failed to demonstrate his prima facie entitlement to judgment as a matter of law, as he failed to establish that he was free from fault in the happening of the accident" (id. at 1061). "In support of his motion, Wen Xu submitted . . . photographs [and] a dashboard video camera recording. . . ." (id.). The Second Department held that "The photographs and dashboard video camera recording [were] . . . inadmissible, as they were not properly authenticated" (id.).
"It is well-settled that a video recording 'may be authenticated by the testimony of a witness to the recorded events . . . that the video[ ] accurately represents the subject matter depicted' " (Keene v Rosas, 215 AD3d 938, 939 [2d Dept 2023]). In Keene, "the surveillance video was properly authenticated by one of the participants to the events, namely, the plaintiff. When questioned about the surveillance video at his deposition, the plaintiff identified himself on the video and testified that it accurately depicted the accident, including the moments immediately before and after the impact. Similarly, at her deposition, Rosas testified that she had previously seen the surveillance video, and that it accurately depicted the accident." (id.) The Second Department thus held that a sufficient foundation was laid for admissibility, and that the court providently exercised its discretion in considering the video (see id.). Here, non-party witness, Guy Shelby Dussek Jasmin, who underwent an Examination Under Oath on May 30, 2024, and who testified that the unknown vehicle looked brown or wine-colored, was never [*7]shown the video footage nor asked whether this was the video obtained from her dashcam from the date of the accident. Neither Respondent Wilson nor Mr. Jones, another non-party witness who underwent an Examination Under Oath on August 20, 2024, were ever shown the video footage and asked if it was a fair and accurate depiction of the accident. And even if the footage was considered, the footage, on its own, does not establish that the accident was a fraud because the footage shows the Uber vehicle being struck in the rear by a vehicle that fled the scene, in addition to showing the three people in the vehicle manifesting shock in reaction to an impact to the rear of the Uber vehicle. Although many speculations may be drawn, this video footage does not depict the unknown vehicle sufficiently for identification by either the make, model, color, or license plate.
Moreover, Ms. Lupo's affidavit in the instant case is based on generalized trends and assumptions without corroborated data. Not only does Ms. Lupo not support Petitioner Liberty Mutual's theory of the purported fraud scheme with evidence to demonstrate that the theory is reasonable, but Petitioner Liberty Mutual does not link Respondent Wilson to the purported scheme. Ms. Lupo does not state which searches were performed, who performed the searches, and/or whether the data is reliable. There is no evidence proffered by Petitioner Liberty Mutual, or even alluded to by Ms. Lupo, to show that any part of the claimed scheme is supported with a "founded belief" that the automobile accident in this case was staged. Without an evidentiary basis, Petitioner Liberty Mutual's assertions of a fraudulent scheme are nothing more than unsubstantiated hypotheses and suppositions insufficient to support a claim of fraud.
It is true that a prima facie case of a fraudulent motor vehicle collision [FN9]
may be demonstrated by circumstantial evidence (see National Grange Mut. Ins. Co. v Vitebskaya, 1 Misc 3d 774 [Sup Ct, Kings County 2003]). "Circumstances insignificant in themselves may acquire probative force as links in the chain of circumstantial proof" (A.B. Med. Servs. PLLC v State Farm Mut. Auto. Ins. Co., 7 Misc 3d 822, 827-828 [Civ Ct, Kings County 2005], quoting Van Iderstine Co. v Barnet Leather Co., 242 NY 425, 435 [1926]); see State Farm Mut. Auto. Ins. Co. v Pace, 2022 NY Slip Op. 30391[U], *5-6 [Sup Ct, Kings County 2022). However, unsubstantiated hypotheses and suppositions are insufficient to raise a triable issue of fraud (see Ocean Acupuncture, P.C. v State Farm Mut. Auto. Ins. Co., 23 Misc 3d 1104[A], 2009 NY Slip Op 50565[U] [Civ Ct, NY County 2009]; see also Hereford Ins. Co. v Mid Atlantic Med., P.C., 2022 NY Slip Op 32713[U], *4 [Sup Ct, NY County 2022]; Hereford Ins. Co. v Oracle Chiropractic PC, 2022 NY Slip Op. 32026[U], *5-6 [Sup Ct, NY County 2022]; Liberty Mut. Ins. Co. v. Martin, 67 Misc 3d 1211[A], 2020 NY Slip Op 50511[U] [Sup Ct, NY County 2020]; Unitrin Advantage Ins. Co. v Advanced Orthopedics and Joint Preservation P.C., 2018 NY Slip Op 33296[U], *7 [Sup Ct, NY County 2018]); cf. Unitrin Safeguard Ins. Co. v Manuel, 236 AD3d 558 [1st Dept 2025]; State Farm Mut. Auto. Ins. Co. v AK Global Supply Corp., 203 AD3d 556, 558 [1st Dept 2022]).
In Matter of Government Empls. Ins. Co. v Tucci (157 AD3d at 679-680), "Tucci demanded arbitration of his claim for supplementary uninsured/underinsured motorist benefits from GEICO. Thereafter, GEICO commenced this proceeding pursuant to CPLR article 75, seeking, inter alia, a permanent stay of arbitration." "The party seeking a stay of arbitration has the burden of showing the existence of sufficient evidentiary facts to establish a preliminary issue which would justify the stay [but] [t]hereafter, the burden shifts to the party opposing the stay to rebut the prima facie showing" (id. at 680). In Tucci, "GEICO failed to show the existence of evidentiary facts regarding Tucci's failure to satisfy the reporting requirement or whether there was physical contact with a hit-and-run vehicle, since, as to those issues, it only provided the unsupported, conclusory assertions of its attorney" (id.). Here, Ms. Lupo's affidavit failed to show the existence of sufficient evidentiary facts tending to show that the subject accident was indeed a fraudulent collision. The arbitration must proceed.
Applicability of Collateral Estoppel
In terms of the preclusive effect of Arbitrator Kokel's award, it is noted that Respondent Wilson was not a party to the arbitration. He assigned his rights to No-Fault insurance benefits to Avenue K Drugs Inc. (See NYSCEF Doc No. 26.) Therefore, Respondent Wilson was no longer in privity with Avenue K Drugs Inc. and is not bound by Arbitrator Kokel's determination (see Triborough Psychiatric v State Farm Mut. Ins. Co., 70 Misc 3d 138[A], 2021 NY Slip Op 50084[U] [App Term 2d, 11th & 13th Jud Dists 2021]; Active Care Med. Supply Corp. v Amica Mut. Ins. Co., 59 Misc 3d 135[A], 2018 NY Slip Op 50500[U] [App Term 2d, 11th & 13th Jud Dists 2018]; Stracar Med. Servs. v Nationwide Mut. Ins. Co., 49 Misc 3d 152[A], 2015 NY Slip Op 51761[U] [App Term 2d, 11th & 13th Jud Dists 2015]).
Timeliness Under CPLR 7503 (c)
Where an insurance company claims lack of coverage, its application for a stay of arbitration is not rendered untimely under CPLR 7503 (c)'s 20-day deadline (see Government Employees Ins. Co. v Hehl, 203 AD2d 570). Therefore, this special proceeding may not be dismissed on the ground that it was commenced past the 20-day deadline.
Necessity of Framed-Issue Hearing
There is no necessity for a framed-issue hearing where the petitioner has failed to make out a prima facie case in support of its claims. Here, Petitioner Liberty Mutual did not make out a prima facie case that the subject collision was fraudulent. Therefore, a framed-issue hearing is not warranted (see Matter of Country-Wide Ins. Co. v Adams, 187 AD3d 1013 [2d Dept 2020]; Matter of AutoOne Ins. Co. v Umanzor, 74 AD3d 1335 [2d Dept 2010]; Matter of Liberty Mut. Ins. Co. v Morgan, 11 AD3d 615 [2d Dept 2004]; Matter of Eagle Ins. Co. v Viera, 236 AD2d 612 [2d Dept 1997]).
Further Discovery
Although the petition (NYSCEF Doc No. 1) discusses the need for discovery in general, [*8]there is no allegation that Respondent Wilson was noticed for an independent medical examination (IME) or that specific requests were not responded to (see Matter of State-Wide Ins. Co. v Womble, 25 AD3d 713 [2d Dept 2006]). In any event, if Respondent Wilson has not yet been examined by doctors selected by Petitioner Liberty Mutual, the latter shall notice such examinations by July 31, 2025, to be held by August 29, 2025, and Respondent Wilson shall attend same, in advance of the arbitration.
Conclusion
Accordingly, IT IS HEREBY ORDERED AND ADJUDGED as follows:
(1) The within petition of Petitioner Liberty Mutual is DENIED to the extent that (a) it seeks to permanently stay the subject uninsured/underinsured/SUM motorist arbitration, and (b) it seeks a framed-issue hearing.
(2) The within petition of Petitioner Liberty Mutual petition is GRANTED to the extent that the subject uninsured/underinsured/SUM motorist arbitration is temporarily stayed through October 1, 2025, and shall be held after said date.
(3) In the event that Respondent Wilson has not yet been examined by doctors selected by Petitioner Liberty Mutual, the latter shall notice such examinations by July 31, 2025, to be held by August 29, 2025, and Respondent Wilson shall attend same.
(4) Any other relief requested by Petitioner Liberty Mutual is DENIED.

Footnotes

Footnote 1:Counsel are reminded of the provisions requiring that an opinion or decision be included in the record on appeal should one be taken (see CPLR 5526; 22 NYCRR 1250.7 [b] [4], [d] [1] [iii]). Transcripts may be procured from the court reporter (see Matter of Lewandowski v Office of Ct. Admin., 173 Misc 2d 335 [Sup Ct, Albany County 1997]).

Footnote 2:This is also known as UM/SUM arbitration.

Footnote 3:According to Respondent Wilson, the Hehl case, in which the Second Department found that the argument that the stay of arbitration was untimely lacked merit, does not apply here. For example, here, there was coverage, and Petitioner Liberty Mutual never came forward with proof that there was no accident.

Footnote 4:CPLR 7503 (c) outlines the rules for serving a notice of intention to arbitrate under New York law, and specifically provides that a party seeking arbitration must serve the other party with a demand or notice of intention to arbitrate, which must identify the arbitration agreement being relied on; include the name and address of the serving party (or its officer/agent if it is an entity); and state that failure to apply for a stay of arbitration within 20 days of service waives the right to later object to the existence or validity of the agreement, whether the agreement was complied with, and any statute of limitations defenses in court. Service of the notice must be effectuated like a summons or by registered or certified mail, return receipt requested.

Footnote 5:According to NYSCEF Doc No. 3, Ms. Lupo identified patterns of targeted Uber rides; hit-and-run collisions at low velocity; the use of gift cards to book rides; common pick-up and drop-off locations; and passengers refusing medical attention at the scene but then later seeking extensive treatment. Testimonies contained inconsistencies regarding trip details, relationships between passengers, and post-accident behavior.

Footnote 6:Respondent Wilson claimed to be attending a memorial service; said that the Uber was stationary at impact; and claimed injury to his face and shoulder. However, dashcam footage shows that the Uber was turning, and there is no evidence of contact or injury. Further, Mr. Jones claimed that he was alone in the Uber and unfamiliar with Respondent Wilson, but this was disproven by the dashcam video and statements by other parties. And Guy Shelby Dussek Jasmin, the driver, confirmed the details of the trip, including the fact that both Respondent Wilson and Mr. Jones were passengers, that the minivan fled, and that passengers refused medical attention.

Footnote 7:It is Petitioner Liberty Mutual's perspective that Respondent Wilson's opposition is insufficient because Respondent Wilson only submitted an attorney affirmation without any affidavit from a person with personal knowledge, which lacks evidentiary value. An attorney affirmation not based upon personal knowledge has no evidentiary value (Zuckerman v City of New York, 49 NY2d 557 [1980]). Moreover, no substantive rebuttal was provided in opposition to Petitioner Liberty Mutual's evidence of fraud.

Footnote 8:Vehicle and Traffic Law § 1141 provides that "[t]he driver of a vehicle intending to turn . . . left within an intersection . . . shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close [to it] as to constitute an immediate hazard" (Rosa v Gordils, 211 AD3d at 1061).

Footnote 9:We use the term "fraudulent collision" rather than "fraudulent accident" because the latter is inherently contradictory. According to Merriam-Webster, an "accident" is defined as an unforeseen and unplanned event or circumstance. By definition, an event involving fraud cannot be considered an accident, as it is neither unforeseen nor unintentional. Referring to a deliberately staged event as an "accident" undermines the meaning of the term and creates an oxymoron.